In re Nancy Coralean ARCHIE, Debtor.

**VIRGINIA EDUCATION LOAN AUTHORITY, Plaintiff,**

v.

**Nancy Coralean ARCHIE, Defendant.**

**COMMONWEALTH OF VIRGINIA, ex rel. STATE EDUCATION ASSISTANCE AUTHORITY, Plaintiff,**

v.

**Nancy Coralean ARCHIE, a/k/a Nancy Archie, Defendant.**

Bankruptcy No. 79–01610.
Adversary Proceeding Nos.
80–0008, 80–0017.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

Dec. 15, 1980.

George Warthen, Wallerstein, Goode & Dobbins, Richmond, Va., for Commonwealth of Virginia, ex rel. State Education Assistance Authority, plaintiff.

S. Broderick Peters, Felton & Fagan, Richmond, Va., for Virginia Education Loan Authority, plaintiff.

Robert J. Macbeth, Jr., Chambliss, Cunningham, Hughes & Macbeth, Richmond, Va., for defendant/debtor, Nancy Coralean Archie.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of two Complaints for the Determination of the Dischargeability of a Debt. The first Complaint was filed on February 6, 1980, by the Virginia Education Loan Authority (VELA), Plaintiff herein, alleging that Nancy Coralean Archie (Archie), Debtor herein, is indebted to VELA in the principal amount of $2,000 plus interest by reason of

a federally insured student loan pursuant to § 523(a)(8) of the Bankruptcy Code (11 U.S.C.). On February 22, 1980, the second Complaint was filed by the Commonwealth of Virginia, *ex rel.* State Education Assistance Authority, Plaintiff herein, alleging that Archie is indebted to it in the principal amount of $2,000 by reason of a federally insured student loan. An Answer was timely filed by Archie to each Complaint alleging as an affirmative defense that an undue hardship would occur if the above debts owed to each Plaintiff were excepted from discharge. On April 9, 1980, an Order was entered by this Court consolidating the two matters for the purpose of trial. A trial was held and briefs were requested and received by the Court. Upon the foregoing, the Court renders the following opinion.

## STATEMENT OF THE FACTS

On November 21, 1979, the Debtor filed a Petition in Bankruptcy under Chapter 7 of the Bankruptcy Code pursuant to § 301 thereof. The parties have stipulated that the $2,000 owing to each Plaintiff is an educational loan within the scope of § 523(a)(8) and that each debt is evidenced by a promissory note executed by the Debtor for value received. The parties have further stipulated that the notes are currently in default and that the notes first became due within five years of the date of the filing of the Bankruptcy Petition. The evidence presented at trial disclosed the following facts. Archie incurred the debts in question while a student at Virginia Commonwealth University, Richmond, Virginia, (VCU). She enrolled in that school in 1974 for the purpose of becoming a graphic illustrator and studied communication arts and design to accomplish that purpose. Archie left school in 1978 prior to receiving a degree and stated that she left school because she was very depressed and had a very low self-esteem due to an obesity problem which was affecting her performance at VCU.

She did not seek a position as a graphic artist upon her leaving but instead accepted full-time employment with the Richmond Newspapers as a classified paste artist at a net weekly salary of $121. In June of 1980 she will have completed her first year of work at the Newspaper and will be reviewed by her superiors for a possible raise. Archie testified that much of her academic problems and later employment possibilities were hampered by her obesity. She indicated a desire to enter a weight loss clinic in hopes that a loss of weight would increase her employment possibilities in higher paying jobs.

Archie contends that the exception of discharge of these debts would create an undue hardship upon her due to her adverse financial situation and her low prospects of obtaining a higher paying position due to her obesity and lack of a college degree. In support, Archie indicated that in the month previous to the trial, she had a net surplus of income over expenses of only $37.13. She is currently in an apartment which obligates her to a monthly rental charge of $225. She had, however, previously resided in an apartment renting for $115 but moved to the more expensive apartment in order to accommodate her 23-year old brother who was planning to move in with her. Although her brother occasionally lived with her in the apartment, he never contributed any money towards the apartment rent, nor contributed any money to other living expenses. Archie is single, has no dependents and is presently living alone. Archie candidly stated that part of the expenses in the month referred to above consisted of above-average expenses in clothing and long-distance telephone calls. She is currently looking for less expensive living quarters but has had no luck in finding same.

Archie has not attempted to work out any repayment plan with either Plaintiff, and in fact never notified VELA or the State Education Loan Authority when she ceased to become a student at VCU as required by her loan agreements with the Plaintiffs.

She has indicated a desire to expend her excess income on a weight reduction program (which she has attempted before), but

noted that neither her current employer nor her doctor has required or prescribed a weight loss program.

## CONCLUSIONS OF LAW

The Debtor has requested a discharge of the respective debts to the Plaintiffs for the reason that repayment of these debts would create an undue hardship on the Debtor. Section 523(a)(8) exempts from discharge any debt:

"for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents...."

■ A review of the legislative history of § 523(a)(8) gives little guidance on the issue of "undue hardship". In determining whether an "undue hardship" would occur on a debtor by declaring the debt incurred by a federally insured student loan nondischargeable, "the rate and amount of his future resources should be estimated reasonably in terms of *ability to obtain, retain,* and continue employment and the rate of pay that can be expected." 2 Appendix, *Collier on Bankruptcy* p. 140 (15th ed.) quoting the Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No. 93–137, 93d Cong. 1st Sess., Pts. I and II (1973). "The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt." *Id.* The legislative history suggest that undue hardship cases will be determined on a case by case analysis.

*In re Matthews* 3 CCH Bankruptcy Law Reports, ¶ 67,049 (D.Conn.1979), the court stated:

"In determining undue hardship the court must consider: (1) if the debtor has any accumulated wealth or any reasonable prospects of acquiring any, (2) what the debtor's chances are of obtaining and retaining study [sic] employment and what income can be expected, (3) the amount the debtor will need to maintain a minimal standard of living, and (4) if there would be anything left from the estimated income to allow the bankrupt to make some payments on the loan without reducing what is needed to live on."

See also *In re Bagley*, 4 B.R. 248, 6 BCD 404 (Bkrtcy.D.Ariz.1980).

Judge Babitt in *In re Kohn*, 20 CBC 994, 1007 (S.D.N.Y.1979) has held that mere financial adversity without more is insufficient. He maintains that there must be present such unique circumstances to render it less likely or likely only with extreme difficulty, or unlikely at all, that the debtor will within the foreseeable future be able to honor the commitment.

"Congress meant the extinguishment of student loans to be an available remedy to those severely disadvantaged economically as a result of unique factors which are so much a part of the bankrupt's life, present and in the foreseeable future, that the expectation of repayment is virtually non-existent unless by the effort the bankrupt strips himself of all that makes life worth living." *In re Kohn, supra* at 1008. (footnote omitted)

■ Reviewing the facts of this case in light of the above criteria, it is clear that this Debtor's financial condition contains no unique set of circumstances which would render the educational loans dischargeable in bankruptcy. Specifically, the evidence presented revealed a net surplus of income over expenditures in the amount of $37.13. This surplus of income was present even though there was an extraordinary high phone bill and extraordinary expenditures in clothing for the month surveyed. This Court sees no reason why under careful

budgeting Archie will not be able to repay the loans in question.

 Further, to succeed on a defense of undue hardship in discharging the educational loans, good faith is implicit in § 523(a)(8). *In re Price*, 1 B.R. 768, 1 CBC 2d 647, 648–49 (Bkrtcy.D.Hawaii 1980). Good faith has not been demonstrated by the Debtor in this case. She made no effort to contact the Plaintiffs when she left school nor did she attempt to negotiate any repayment programs with the Plaintiffs. She moved into a more expensive apartment and allowed her brother to live there gratuitously. While this Court is not unsympathetic to the Debtor's sheltering and caring of her brother, it should not allow her to do so at the expense of the educational loan programs.

In applying the four points of the *Matthews* case, this Debtor's circumstances do not mandate a discharge of the educational loans. While the Debtor has not accumulated any appreciable wealth, she has obtained steady employment for approximately a year and is currently due to be reviewed for a raise. The Debtor has sufficient income to maintain a minimal standard of living and in fact has a surplus income over expenses which would be available to begin a repayment program.

 Regarding the repayment program which should be instituted, authority exist to allow this Court to revise the repayment schedule to lessen the financial burden of the monthly payments. *In re MacPherson*, 19 CBC 178 (W.D.Wis.1978); *In re Littell*, 6 B.R. 85, 6 BCD 1049 (Bkrtcy.D.Oregon 1980). This Court has also noted the willingness of the Plaintiffs to provide liberal and extended terms for repayment of the respective obligations. This Court directs that each loan authority provide to the Debtor schedules of regular payments spread over ten years.

 Both Plaintiffs in this case have requested attorney's fees in various amounts in addition to declaring the debt of the Debtor nondischargeable. It is this Court's opinion that attorney's fees are not appropriate in this instance and will not be allowed. The debt of the Debtor with interest at the rate specified in the respective notes and court costs to each Plaintiff is determined to be nondischargeable in bankruptcy.