**In re Robert Carmen BROWN and Eleanor (NMN) Brown, Debtors.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Robert C. BROWN, Defendant.**

**Bankruptcy No. 80–20276.**

**Adv. No. 81–0071.**

United States Bankruptcy Court, D. Kansas.

March 8, 1982.

Robert Carmen Brown, Wichita, Kan., pro se debtor.

John T. Flannagan, Olathe, Kan., for debtor/defendant.

Alleen S. Castellani, Asst. U. S. Atty., Topeka, Kan., for plaintiff.

F. Stannard Lentz, Shawnee Mission, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for trial on August 25, 1981. Plaintiff, United States of America, was represented by Alleen S. Castellani, Asst. U. S. Attorney for the District of Kansas. Defendant, Robert C. Brown, was represented by John T. Flannagan, of Payne & Jones, Chartered.

At trial, the Court granted plaintiff a partial summary judgment on three issues (*See Journal Entry of Interlocutory Judgment of September 23, 1981*). Specifically, the Court ruled that:

1. Defendant was liable to plaintiff on five promissory notes in the principal amount of $8,500.00;

2. Defendant's liability was nondischargeable under 11 U.S.C. § 523(a)(8)(A); and

3. Defendant's motion for sanctions against plaintiff was denied.

The Court took under advisement the issue of the amount of defendant's liability for accrued interest on the notes.

After the Court granted the partial summary judgment and took the issue of interest under advisement, the parties proceeded to trial on the sole remaining issue: whether defendant's liability for the $8,500.00 is dischargeable for "undue hardship" under 11 U.S.C. § 523(a)(8)(B). After the trial, the Court took that issue under advisement, as well. Thus, this memorandum opinion is to resolve two issues: (1) the amount of defendant's liability for accrued interest on the notes; and (2) whether defendant's total liability is dischargeable because of undue hardship.

## FINDINGS OF FACT

This Court, after reviewing the evidence, stipulations, briefs and other pleadings herein, finds as follows:

1. That the parties stipulated that Robert Brown executed five promissory notes for educational loans, between December 12, 1971 and October 31, 1974. The total amount of the notes was $8,500.00 plus seven percent simple interest. The lender was Bank of American NT & SA, Valley Almansor. The United States guaranteed the notes pursuant to the provisions of Title IV of the Higher Education Act of 1965, as amended. (20 U.S.C. § 1070, *et. seq.*)

2. That under the terms of the notes, repayment was to commence nine months from the date Brown ceased to carry at least one-half the normal full-time academic workload at an eligible institution. Excluding the normal academic summer vacations, Brown was a full-time student at eligible institutions until May 31, 1975, when he completed post medical school studies at Texas Tech University Medical School. Repayment on all five notes should have commenced nine months thereafter, on or about February 25, 1976.

3. That Brown never commenced repayment. According to the terms of the notes, repayment was to be made in accordance with a repayment schedule or a separate instrument provided by the lender. The lender never provided such a schedule or such an instrument for Brown to execute. The lender declared the notes in default and accelerated the balance due. The plaintiff, as guarantor, paid the $8,500.00 principal due, on July 22, 1977. The lender then assigned all right, title and interest in the notes to plaintiff.

4. That on October 25, 1979, plaintiff brought Civil Action No. 79–2283 in the United States District Court for the District of Kansas, praying for judgment in the amount of $8,500.00 plus accrued interest of $1,607.82 plus interest at the rate of 7% from and after June 26, 1979, plus costs.

5. That said civil action was stayed when Brown and his wife filed a voluntary Chapter 7 petition in bankruptcy on April 3, 1980. Discharge was granted on September 11, 1980.

6. That said civil action was removed to this Court, upon Brown's application, under 28 U.S.C. §§ 1471, 1478 and 11 U.S.C. § 523(a)(8) on March 31, 1981, as an adversary proceeding.

7. That Brown testified at length as to his financial status and prospects. He also discussed his difficulties in attaining his present educational and financial status. Brown is a Canadian national permanently residing in this country. He is married and has two teenage children. He dropped out of school at the age of 12, due to what was later diagnosed as a learning disability. In his middle twenties he resumed his education, and managed to complete high school in spite of having a family to support. His goal was to become a medical doctor specializing in learning disabilities. To that end, he obtained a bachelor's degree in biology from the University of Arkansas. He also did graduate research. He was denied admission to several medical schools because of his age. However, he was finally accepted into the school of medicine at the University of Guadalajara (Mexico). He received an M.D. degree from that institution in 1974. He spent the next academic year at Texas Tech University Medical School, as an intern. From 1975 to 1977, he was a pediatric resident at a hospital in Chattanooga, Tennessee. Then he attended Kansas University Medical Center on a fellowship; and in August of 1979, he received a certificate of residency in developmental disabilities. In spite of Brown's extraordinary perseverance and industriousness, he has not fully realized his goal. He is not licensed to practice medicine. Since 1979 he has failed the Kansas licensing examination four times. Since August of 1979, he has been employed on the strength of a temporary license, as Director of the Institute of Logopedics in Wichita, Kansas. At trial, Brown testified that his temporary license had expired and that he would therefore be terminated from his job. He testified that he must take a special course and get special permission before he will be allowed to take the exam a fifth time; but that he intends to take the exam again.

8. That the Court admitted into evidence a statement of the Browns' monthly

income and expenses. (*Def. Ex. C*). Brown's net monthly income is $1,432.00. Mrs. Brown, a registered nurse who works part time, nets $600.00 a month. Thus, their total net monthly income is $2,032.00. Their monthly expenses total $2,465.00 and were itemized as follows:

rent ............................$650.00
food ............................320.00
car loans .......................505.00
gasoline ........................140.00
utilities .......................165.00
insurance .......................125.00
medical .........................50.00
dental ..........................50.00
clothing ........................100.00
car repair ......................25.00
taxes ...........................25.00
uniforms ........................10.00
professional fees ...............30.00
hair and beauty .................25.00
entertainment ...................50.00
private school ..................195.00

## CONCLUSIONS OF LAW

### I.

At the commencement of the trial, this Court took under advisement the issue of Brown's liability for interest on the notes. Plaintiff established that Brown was liable for $8,500.00 plus interest at the rate of seven per cent per annum. This Court accepts plaintiff's calculation that $1,607.82 in interest had accrued as of June 26, 1979. The only question then, is how much interest accrued between June 26, 1979, and April 3, 1980, the date of the petition; because 11 U.S.C. § 502(b)(2) indicates that a creditor is entitled to the principal balance due plus prepetition accrued interest. At the contract rate of seven per cent per annum, an additional $461.32 in interest accrued between June 26, 1979, and April 3, 1980; therefore, the total amount of Brown's liability for interest on the notes is $2,069.14, thus his total liability on the notes (principal and interest), is $10,569.14.

### II.

■ Brown urges this Court to find that his total liability is dischargeable, pursuant to 11 U.S.C. § 523(a)(8)(B). That section states:

"§ 523. Exceptions to discharge.

*(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—*

\* \* \* \* \* \*

*(8) to a governmental unit, or a non-profit institution of higher education, for an educational loan, unless—*

\* \* \* \* \* \*

*(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;"*

Unfortunately, the Code does not define "undue hardship"; and there is not much legislative guidance. It seems universally accepted, however, that "undue hardship" contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy. *In re Kohn*, 5 B.C.D. 419 (S.D.N.Y.1979).

It is also generally accepted that "undue hardship" must be determined on a case-by-case basis. Courts have strived to find factors or tests to aid their determination, however. Some courts have derived tests from language in one of the few legislative documents:

"In order to determine whether nondischargeability of the debt will impose an 'undue hardship' on the debtor, the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents at a minimal standard of living within their management capability as well as to pay the educational debt." *Communication from the Executive Director, Commission on the Bankruptcy Laws of the United States*, H.R. Doc. No. 93–137, 93rd Cong., 1st Sess., Pt. II (1973) 140–141, n. 17.

See, for e.g. *In re Bell*, 5 B.R. 461, 2 C.B. C.2d 977 (Bkrtcy., N.D.Ga.1980); *In re Bagley*, 4 B.R. 248, 6 B.C.D. 404, 2 C.B.C.2d 251 (Bkrtcy., D.Ariz.1980).

In the most exhaustive analysis to date, one court adopted a tri-partite test. See *In re Johnson*, 5 B.C.D. 532 (E.D.Pa.1979). The initial test, called the "mechanical test", compared financial resources and expenses. Specifically, the court considered past and current financial resources, as well as future resources and prospects in light of the debtor's skills, educational level, employment record and ability to obtain and retain employment. The court then looked at the debtor's expenses to see if the expenses were those of a reasonably prudent person. Generally, the court found, reasonable expenses were minimal nondiscretionary expenses plus extraordinary expenses, justified by special needs of the debtor.

If the court found that there was sufficient money to pay the debt, based on a comparison of income and expenses under the mechanical test, then the debt would be nondischargeable, for lack of undue hardship. However, if the mechanical test indicated that the debtor might have difficulty paying the debt, the court moved on to the second level of the test, the good faith test. The rationale for considering the debtor's good faith under § 523(a)(8)(B) was that the overall policy of the Code was to give a fresh start to an honest, but unfortunate debtor. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

In the good faith test, the *Johnson* court looked at whether the debtor had made an attempt to maximize income and minimize expenses. It also looked to whether the debtor's insolvency was due to factors within or beyond the debtor's control. If the court found that the debtor was in good faith, the debt was discharged. If the court found that the debtor was not in good faith, the debt was presumed nondischargeable. However, this presumption could be rebutted after an analysis under the third level of the test, the policy test.

In the policy test, the *Johnson* court looked at two factors: (1) whether the dom-inant purpose of the bankruptcy was to escape liability for the student loan; and (2) whether the education obtained through the loan had enhanced the debtor's earning capacity. If neither factor existed the presumption of nondischargeability would be rebutted. However, if either factor existed the debt would not be discharged.

Most courts rely on a mechanical type of test; but some look at good faith and other policy considerations, although not necessarily in the systematic chronological way of the *Johnson* court. See, for e.g., *In re Packer*, 9 B.R. 884 (Bkrtcy., D.Mass.1981); *In re James*, 4 B.R. 115, 22 C.B.C. 864, 1 C.B.C.2d 862, CCH ¶ 67424 (Bkrtcy., W.D. Pa.1980); *In re Fonzo*, 1 B.R. 722 (Bkrtcy., S.D.N.Y.1979), where the courts considered whether the loan and education had enhanced the debtor's job prospects. Also see, for e.g., *In re Baker*, 10 B.R. 870, CCH ¶ 67985 (Bkrtcy., E.D.Tenn.1981); *In re Price*, 1 C.B.C.2d 647 (U.S.D.C., Hawaii 1980); *In re Littell*, 6 B.R. 85, 6 B.C.D. 1049, 2 C.B.C.2d 1105, CCH ¶ 67671 (Bkrtcy., D.Ore.1980) where the courts considered whether the dominant purpose of the bankruptcy was to escape liability on the student loans. Also, see *In re Densmore*, 8 B.R. 308, 7 B.C.D. 271, 3 C.B.C.2d 471 (Bkrtcy., N.D. Ga.1980); *In re Archie*, 7 B.R. 715 (Bkrtcy., E.D.Va.1980); *In re Littell, supra; In re Price, supra*, where the courts considered whether the debtor had tried, in good faith, to maximize income and minimize expenses.

█ This Court thinks it advisable to consider all these factors. After all, the Code is intended to protect honest debtors and debtors should not be permitted to hide behind .the shield of undue hardship when the hardship is of their own unreasonable, unprudent making. Further, in light of Congress' attempt to close the door on abuse by those who accepted the loans with the anticipation of wiping them out in bankruptcy, policy considerations are warranted.

█ Here the debtors' monthly expenses of $2,465.00 greatly exceed their net monthly income of $2,032.00. Their nondiscretion-

ary expenses of rent, food, utilities, taxes, insurance, gasoline, car maintenance and medical bills are, on the whole, acceptable. However, a monthly rent of $650.00 for a family of four in this region is excessive. Brown testified that he was unable to find cheaper "suitable" housing. While this Court does not ascribe to the view that all debtors must reduce their expenses to a poverty level standard, this Court does think that undue hardship cannot exist absent some belt tightening by the debtor. Brown cannot continue to spend $400.00 more a month than he and his wife earn, even if it means lowering his standard of living to a less "suitable" level.

Brown could also significantly minimize his discretionary expenses. He and his wife pay $505.00 a month for payments on two late model cars; they send their children to a private school costing $195.00 a month; they choose to spend $100.00 a month for clothes, $25.00 for hair, and $50.00 for entertainment.

This Court finds that the Browns have maximized their expenses, rather than minimized them. The Court further finds that but for those loans, Brown would not be making over $24,000.00 a year as Director of the Institute of Logopedics.

The Court further finds that the Browns have not made a sincere effort to maximize their income. Brown testified that his wife worked part-time because she for years, was the major breadwinner while he was in school. The demand for registered nurses these days is at a premium; and the Browns could significantly increase their income if Mrs. Brown worked full time.

At trial, Brown testified that without a temporary license to practice medicine, he would lose his job. That, alone, is insufficient to find undue hardship. As is stated in *In re Kohn*, 5 B.C.D. 419, 422 (S.D.N.Y. 1979):

> "The mere fact of imminent unemployment does not move the court. If temporary unemployment were the basis for discharge, bankrupts would be encouraged to come here unemployed, seek an undue hardship discharge and then seek gainful employment."

Brown has a B.S. and an M.D. degree. He has been employed in the medical field since 1975. The fact that he has not been licensed to practice medicine is unfortunate; however, his history demonstrates that he has the skill, education, experience and perseverance to obtain a well paying job in the medical field, and perhaps pass the licensing board exam in the future.

In view of the uncertainty of Brown's income in the near future, this Court hesitates to make the total debt nondischargeable. However, a review of Brown's expenses indicates that with some belt tightening, he could pay a substantial portion of the debt.

Interestingly, most courts have made an all or nothing finding under § 523(a)(8)(B); but there are a few courts who have reduced the amount of the debt or revised the payment schedule. See *In re Littell*, 6 B.R. 85, 6 B.C.D. 1049, 2 C.B.C.2d 1105, CCH ¶ 67671 (Bkrtcy., D.Ore.1980); *Matter of Hemmen*, 7 B.R. 63 (Bkrtcy., N.D.Ala.1980); *In re Archie*, 7 B.R. 715 (Bkrtcy., E.D.Va. 1980).

■ Here, plaintiff never set up a repayment schedule nor had Brown sign a separate instrument with repayment terms. Therefore, this Court finds that it would be equitable to reduce the amount of nondischargeable liability by the amount of the accrued interest, $2,069.14.

According to the notes, and the Higher Education Act, repayment must be completed, in any event, within 15 years after the notes were executed. The first note was executed on December 12, 1971, and the last note was executed on October 31, 1974. This Court finds, then, that repayment must be completed by October 31, 1989, which gives Brown more than seven years to repay his obligations. This Court finds that Brown could pay $7,000.00 over the course of seven years, at a monthly rate of $83.34. To that end, Brown's debt to plaintiff is nondischargeable to the extent of $7,000.00 and dischargeable to the extent of $3,569.14.

THE FOREGOING CONSTITUTES MY
FINDINGS OF FACT AND CONCLU-
SIONS OF LAW UNDER BANKRUPTCY
RULE 752 AND RULE 52(a) OF THE
FEDERAL RULES OF CIVIL PROCE-
DURE.