**In re Ronald Duane COURTNEY, Debtor.**

**Ronald Duane COURTNEY, Plaintiff,**

**v.**

**GAINER BANK, State Student Assistance of Indiana, Defendants.**

**Bankruptcy No. 86–60522.
Adv. No. 86–6075.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division at Gary/Lafayette.

Oct. 5, 1987.

Richard Zunica, Lowell, Ind., for debtor.

Price Jackson, Indianapolis, Ind., for State Student Assistance Com'n of Indiana/Gainer Bank.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

KENT LINDQUIST, Chief Judge.

### I

### Statement of Proceedings

This adversary proceeding was instituted by the Debtor by complaint filed June 4, 1986 praying that the scheduled indebtedness of the Debtor to Gainer Bank (hereinafter: "Gainer") and guaranteed by the State Student Assistance Commission of Indiana (hereinafter: "Indiana") is dischargeable in Bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B) based on undue hardship.

Pursuant to the Pretrial Order of February 10, 1987, this adversary was set down for Bench trial on March 16, 1987 at which time the same was submitted and evidence and arguments heard.

### II

### Findings of Fact

The Debtor testified that he was 31 years of age, presently married and was living with his wife and three children ages nine, ten and twelve.

The Debtor just purchased a new home about one month prior to the trial and moved out of a trailer which he sold for $500.00, the proceeds of which were used to purchase a new washer and dryer. The monthly mobile home payments were approximately $119.00 a month while the monthly payments on the new home are $300.00. The Debtor stated his previous budget filed with his Chapter 13 case was erroneous and should have reflected previous monthly expenses for shelter of $250.00. The new residence required a $2,500.00 down payment which was borrowed by the Debtor from his father-in-law.

The Debtor had worked nine years for Inland Steel and presently employed as a janitor by that company. His highest job classification was as a flue cleaner. He asserted he will never obtain that class again.

The Debtor's earnings were as follows for the following years:

| 1983 | $10,000.00 | |
| 1984 | $14,600.00 | |
| 1985 | $14,000.00 | (including unemployment compensation of $3,500.00) |
| 1986 | $21,800.00 | |

The Debtor stated that although 1986 was the first full year he had worked in six years his prospects for the future with Inland were speculative and was based to a certain extent on the future of the steel industry in general which has been depressely and in particular on the success of Inland's main competition, USX. His projected income for 1987 was $21,800.00.

The Debtor does not have a high school diploma.

The Debtor asserted his wife had epilepsy and was on medication which was not completely covered by insurance.

The Debtor injured the cornea on one eye, is presently on sick leave and the medical costs will not be covered by insurance. The prognosis for the eye is uncertain though no indication was given there would be any permanent damage, or even if there was that it would affect his present employment, but he is in otherwise good health.

The Debtor states his present expenses are as follows:

1. Food—$400.00 a month.
2. Mortgage payment—$300.00 a month plus Insurance and taxes.
3. Car Payment—none; however $100.00 a month is expended for gas and oil and $50.00 a month is expended for maintenance of a 1974 Plymouth Duster and 1971 Chevrolet Truck.
4. Clothes—$175.00 a month.

5. Children's school expenses—$50.00 a month.

6. Utilities—$150.00 a month (estimated).

7. Phone—$45.00 a month.

8. Union Dues—$25.00 a month.

9. Repayment of $2,500.00 down payment on purchase of house to father-in-law—$100.00 a month.

10. Church—$150.00 a month.

The Court takes judicial notice that the Debtor's Schedule of Current Income and Current Expenditures filed with his original petition which shows, among other things, the following:

1. Clothing $25.00

2. Transportation $80.00.

The Schedule also showed a monthly take home pay of $1,200.00 less $894.00 in monthly expenses for a difference of $306.00.

The Debtor declared he had accumulated some 26 hours in credits from Ivy Tech, a local vocational school, towards an associates degree and that some 6 to 8 hours thereof were financed through the loan in question. He had attended school full-time for one quarter and had quit school in January or February, 1986.

The Debtor executed the student loan on April 3, 1985 for the gross amount of $2,500.00 and no payments had been made thereon. The repayment terms are set out at paragraph D of the note and is subject to certain grace periods and deferment periods and is repayable within 15 years, over a repayment period that generally is from 5 to 10 years. Clause H provides for acceleration on default under certain circumstances. The repayment schedule is in a separate document referred to in the note but not admitted into evidence.

The Court takes judicial notice that the Debtor scheduled $359,774.81 in unsecured debt of which $300,000 was attributable to three creditors arising out of an auto accident and subrogation claim in 1980.

This Court takes judicial notice that the Debtor had scheduled one other student loan to Education Financial Services in the sum of $2,500.00 which was incurred in 1985. This loan has not been the subject to a nondischargeability complaint.

All other unsecured debts were fully discharged in the Debtor's bankruptcy. The record does not reflect any reaffirmations filed by the Debtor.

The Court also judicially notes that the Debtor exempted as his personal property the following:

| | | |
|---|---|---|
| 1. | Household goods | $ 750.00 |
| 2. | 1975 Chevrolet | $ 500.00 |
| 3. | 1971 Chevrolet Truck | $ 500.00 |
| 4. | 1969 PMC Mobile Home | $3,000.00 |
| 5. | 1979 Sea Nymph Boat | $ 750.00 |

The Court also takes judicial notice of the Debtor's Schedule A–2 of Secured Debt which states the Debtor has no such debt, and the Debtor's Schedule A–1 as to priority creditors which does not reflect any nondischargeable tax obligations that would have to be paid by post-discharge notwithstanding the Debtor's discharge.

### III

**Conclusions of Law and Discussion**

Section 523(a)(8)(B) of title 11 provides as follows:

A discharge under sections 727, 1141, 1228(a), 1228(b) or 1328(b) does not discharge an individual from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents; (Emphasis added).

*Collier on Bankruptcy* Comments on paragraph (B) of the above section as follows:

Paragraph (B) of subdivision (a)(8) is the "hardship" provision that permits the court to discharge a student loan otherwise non-dischargeable, if excepting the debt from discharge will impose an undue hardship on the debtor or the debtor's dependents. This exemption from the exception to discharge is discretionary with the bankruptcy judge who will have to determine whether payment of the debt will cause undue hardship on the debtor and his dependents thus defeating the "fresh start" concept of the bankruptcy laws. There may well be circumstances that justify failure to repay a student loan such as illness; incapacity or other extenuating circumstances. When the court finds that such circumstances exist, it may order the debt discharged.

3 *Collier on Bankruptcy*, ¶ 523.18, p. 523–127 (L. King 15th ed. (Footnotes omitted).

The term "undue hardship" is not defined in the Bankruptcy Code. As stated in *In re Briscoe*, 16 B.R. 128, 130 (Bankr.S.D. N.Y.1981), the words "undue hardship" are "not defined by the Code but are words of art and are left to the discretion and judgment of the Court." Furthermore, the legislative history to this section is of little assistance. *See In re Bell*, 5 B.R. 461, 462 (Bankr.N.D.Ga.1980). The Commission on Bankruptcy Laws of the United States recommend that student loans, "should not as a matter of policy be dischargeable before he (debtor) has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt." *Report of the Commission on the Bankruptcy Laws of the United States*, H.R. Doc. no. 137, 93rd Cong., 1st Sess. pt. II, p. 140, n. 15.

The 1973 Report of the Commission of Bankruptcy Laws provided the following test:

In order to determine whether non-dischargeability of the debt will impose an 'undue hardship' on the debtor, the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.

*Report of the Commission on the Bankruptcy Laws of the United States*, H.R. Doc. no. 137, 93rd Cong., 1st Sess., Pt. II, 140, 141 (Appendix 2) (1973) *reprinted*, *Collier on Bankruptcy*, Appendix 2, L. King, (15th ed.).

The Commission's comments set out a test for undue hardship that is followed in many Bankruptcy Courts, i.e. the Debtor is denied discharge if he has the *present or future* ability to repay his loan, i.e. the reasonable probability that future income and expenses will be sufficient to pay the debt without undue hardship should be taken into account. *See e.g., In re Andrews*, 661 F.2d 702, 704 (8th Cir.1981); *Matter of Osborn*, 72 B.R. 691, 693 (Bankr.W.D.Mo. W.D.1987); *In re Bennett*, 38 B.R. 392 (Bankr.W.D.Mo.1984); *In re Boylen*, 29 B.R. 924 (Bankr.N.D.Ohio 1983); *In re Burden*, 17 B.R. 891 (Bankr.E.D.Pa.1982); *In re Wegfehrt*, 10 B.R. 826 (Bankr.N.D. Ohio 1981); *In re Littell*, 6 B.R. 85 (Bankr. D.Ore.1980); *In re Bell*, 5 B.R. 461, *supra*. If, however, the Debtor's inability to pay is self-imposed, discharge may be denied. *See e.g., In re Price*, 1 B.R. 768 (Bankr.D. Hawaii 1980).

As stated by the *Wegfehrt* court:

The Bankruptcy Court must determine whether there would be anything left from the debtor's *estimated future income* to enable the Debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimum standard of living.

*In re Wegfehrt*, 10 B.R. 826, 831, *supra*.

The Court in *In re Johnson*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979), developed a test that has three parts: a mechanical test, a good

faith test, and a policy test. In order to pass the mechanical test, the debtor must show his inability to repay the loan. To pass the good faith test, he must show that his inability to pay is not caused by an extravagant life style or his failure to look for a job. These are basically the standards set out in the Bankruptcy Commission's test set out above. Under the *In re Johnson* test, however, a debtor who has passed the mechanical test may qualify for a hardship discharge even though he fails to pass the good faith test if he passes the policy test. The policy test is passed by proving that his education has not benefited him economically and that his dominant motive in filing for bankruptcy is not to discharge his student loan. *See, In re Craig*, 64 B.R. 854 (Bankr.W.D.Pa.1986); *In re Frech*, 62 B.R. 235 (Bankr.D.Minn. 1986); *In re Binder*, 54 B.R. 736, 739 (Bankr.D.N.Dak.1985); *In re Erickson*, 52 B.R. 154 (Bankr.D.N.Dak.1985); *In re Savercool*, 51 B.R. 180 (Bankr.W.D.N.Y.1985); *In re Lezer*, 21 B.R. 783 (Bankr.N.D.N.Y. 1982); *In re Birden*, 17 B.R. 891 (Bankr.E. D.Pa.1982); *In re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *In re Briscoe*, 16 B.R. 128 (Bankr.S.D.N.Y.1981); which have followed the *Johnson* test. *Compare Matter of Love*, 28 B.R. 475 (Bankr.S.D.Ind. 1983), and *In re Clay*, 12 B.R. 251 (Bankr. N.D.Iowa 1981) where the Courts found the *Johnson* case instructive and helpful but where the Courts looked to and considered other factors.

As to the "Mechanical" test the Court in *In re Johnson* formulated an extensive check list of future financial resources to be used by the Court. *In re Johnson*, 5 B.C.D. 532, 537–538, *supra*. This Court will not burden this opinion by setting out these factors. However, the Court in *In re Brown*, 18 B.R. 219 (Bankr.D.Kan.1982) sets out a good summary of the *In re Johnson* tri-partite test, as well as tests applied by other courts. The *Brown* court stated:

> In the most exhaustive analysis to date, one court adopted a tri-partite test. *See In re Johnson*, 5 B.C.D. 532 (E.D.Pa. 1979). The initial test, called the "mechanical test", compared financial re-

sources and expenses. Specifically, the court considered past and current financial resources, as well as future resources and prospects in light of the debtor's skills, educational level, employment record and ability to obtain and retain employment. The court then looked at the debtor's expenses to see if the expenses were those of a reasonably prudent person. Generally, the court found, reasonable expenses were minimal nondiscretionary expenses plus extraordinary expenses, justified by special needs of the debtor.

If the court found that there was sufficient money to pay the debt, based on a comparison of income and expenses under the mechanical test, then the debt would be nondischargeable, for lack of undue hardship. However, if the mechanical test indicated that the debtor might have difficulty paying the debt, the court moved on to the second level of the test, the good faith test. The rationale for considering the debtor's good faith under § 528(a)(8)(B) was that the overall policy of the Code was to give a fresh start to an honest, but unfortunate debtor. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

In the good faith test, the *Johnson* court looked at whether the debtor had made an attempt to maximize income and minimize expenses. It also looked to whether the debtor's insolvency was due to factors within or beyond the debtor's control. If the court found that the debtor was not in good faith, the debt was presumed nondischargeable. However, this presumption could be rebutted after an analysis under the third level of the test, the policy test.

In the policy test, the *Johnson* court looked at two factors: (1) whether the dominant purpose of the bankruptcy was to escape liability for the student loan; and (2) whether the education obtained through the loan had enhanced the debtor's earning capacity. If neither factor existed the presumption of nondischargeability would be rebutted. However, if

either factor existed the debt would not be discharged.

Most courts rely on a mechanical type of test; but some look at good faith and other policy considerations, although not necessarily in the systematic chronological way of the *Johnson* court. *See, for e.g., In re Packer*, 9 B.R. 884 (Bkrtcy.D. Mass.1981); *In re James*, 4 B.R. 115, 22 C.B.C. 864, 1 C.B.C.2d 862, CCH ¶ 67424 (Bkrtcy.W.D.Pa.1980); *In Fonzo*, 1 B.R. 722 (Bkrtcy.S.D.N.Y.1979), where the courts considered whether the loan and education had enhanced the debtor's job prospects. Also see, for *e.g., In re Baker*, 10 B.R. 870, CCH ¶ 67985 (Bkrtcy.E. D.Tenn.1981); *In re Price*, 1 C.B.C.2d 647 (U.S.D.C., Hawaii 1980); *In re Littell*, 6 B.R. 85, 6 B.C.D. 1049, 2 C.B.C.2d 1105, CCH ¶ 67671 (Bkrtcy.D.Ore.1980) where the courts considered whether the dominant purpose of the bankruptcy was to escape liability on the student loans. Also, *see In re Densmore*, 8 B.R. 308, 7 B.C.D. 271, 3 C.B.C.2d 471 (Bkrtcy.D.N. Ga.1979); *In re Archie*, 7 B.R. 715 (Bkrtcy.E.D.Va.1980); *In re Littell, supra; In re Price, supra,* where the courts considered whether the debtor had tried, in good faith, to maximize income and minimize expenses.

This Court thinks it advisable to consider all these factors. After all, the Code is intended to protect honest debtors and debtors should not be permitted to hide behind the shield of undue hardship when the hardship is of their own unreasonable, unprudent making. Further, in light of Congress' attempt to close the door on abuse by those who accepted the loans with the anticipation of wiping them out in bankruptcy, policy considerations are warranted.

*In re Brown*, 18 B.R. 219, 223, *supra.*

Several courts have determined whether the student loan is dischargeable by placing considerable emphasis on whether the Debtor is a bankruptcy abuser by determining his *motive* for *filing* bankruptcy. These courts are more likely to grant a discharge if the principal motive for filing the bankruptcy is not to discharge the student loan. *See In re Ford*, 22 B.R. 442,

445–446 (Bankr.W.D.N.Y.1982); *In re Wegfehrt*, 10 B.R. 82b *supra; In re Fonzo*, 1 B.R. 722, 724 (Bankr.S.D.N.Y.1979); *In re Price*, 25 B.R. 256 (Bankr.W.D.Mo.1982); and, *In re Rappaport*, 16 B.R. 615, 616 (Bankr.D.N.J.1981). The courts looked to the relative proportion of the individual debtor's student loans obligation to total indebtedness as significant in determining dischargeability because "hardship" must be construed in the context of general debt. The Court in *In re Bryant*, 72 B.R. 913, 915, n. 2 (Bankr.E.D.Pa.1987) declined to follow the three-part test of *In re Johnson, supra,* and noted that while the analysis of the *Johnson* Court was helpful in cataloging circumstances which can be considered by the Court, the "policy test" of *In re Johnson, supra,* in which the Court considers the amount and percentage of student loan indebtedness to all of the Debtor's indebtedness to determine whether the dominant purpose of the bankruptcy was to discharge the student loan was rejected. The *Bryant* Court noted avoiding the consequences of debts is normally the reason for filing bankruptcy and the fact that the Debtor seeks to discharge almost exclusively student loan obligations in his bankruptcy should be irrelevant in a § 523(a)(8)(B) analysis. The *Bryant* Court was of the opinion that the application of the policy test by the Court has led to "unbridled subjectivity" which prevades many decisions in this area.

The *Bryant* Court also noted that some courts have placed considerable emphasis on whether the education obtained through the student loan has been of use to the debtor. *See e.g., In re Powelson*, 25 B.R. 274, 276 (Bankr.D.Neb.1982), where the Court considered it appropriate to comment that the schooling financed by the loan had "not increased [the debtor's] skills to any significant amount."; *In re Littell*, 6 B.R. 85, 88 (Bankr.D.Ore.1980) where the Court stated, "There is … great pressure and temptation on the part of college authorities to encourage students to apply for loans and grant them when in effect it is not the sound economic thing to do. This should be a substantial factor in determin-

ing whether a student loan should be dischargeable," [1] and *In re Motor*, 64 B.R. 317, 318 (Bankr.W.D.Pa.1986), when the Court held, "the mere possession of a college degree opens many doors of opportunity that would otherwise be slammed shut. To reap the benefits of the degree without shouldering the responsibility, even if it be in some limited capacity, is not acceptable ..., unless, there exists a uniquely devastating hardship." The *Bryant* Court pointed out that in *In re Fitzgerald*, 40 B.R. 528, 529–530 (Bankr.E.D.Pa.1984) it had agreed with the rationale of *In re Albert*, 25 B.R. 98, 102 (Bankr.N.D.Ohio 1982), where the Court held that "[T]he purpose of these educational loans is to provide individuals with the means to improve their educational levels and their chances of success, not the fact of success." The *Bryant* Court held that the policy factor was irrelevant, and that the debtor's "use" of his education is merely an element in determining his income and no more.[2]

■ The burden of proof on the issue of "undue hardship" rests with the debtor. *See In re Erickson*, 52 B.R. 154, 157 (Bankr.D.N.D.1985), and cases cited therein.

■ The words "undue hardship" are not defined by the Code, but are words of art and are left to the discretion and judgment of the court. *In re Briscoe*, 16 B.R. 128, 130 (Bankr.S.D.N.Y.1981).

The Court's attention is also directed to one of the earliest reported cases regarding undue hardship, *In re Kohn* 5 B.C.D. 419 (Bankr.S.D.N.Y.1980), which held that an undue hardship discharge should be granted only to debtors "severely disadvantaged

economically as a result of unique factors which are so much a part of the bankrupt's life, present and in the foreseeable future, that the expectation of repayment is virtually non-existent, unless by that effort the bankrupt strips himself of all that makes life worth living." *Id.* at 424. *See also, In re Archie*, 7 B.R. 715 (Bankr.E.D.Va.1980), *citing, In re Kohn.* Thus, under this view the Debtor must show not only an undue hardship, *i.e.,* a present or future inability to repay the loan, the debtor must also show that the inability to pay is caused by extraordinary circumstances. This is indeed a stringent test of "undue hardship".

Whether a discharge is granted turns on the facts and circumstances surrounding that particular bankruptcy. *In re Wegfehrt*, 10 B.R. 826, 830, *supra; In re Rappaport*, 16 B.R. 615, 616, *supra.*

The existence of the adjective, "undue" in the statutory exception to the general rule of non-dischargeability of student loans permitting discharge if failure to discharge would impose "undue hardship" on debtor and debtor's dependents indicates that Congress viewed garden variety hardship as an insufficient excuse for discharge of student loans. *See In re Brunner*, 46 B.R. 752, 754 (D.C.S.D.N.Y.1985). *In re Frech*, 62 B.R. 235, 243 (Bankr.D.Minn. 1986), and cases cited therein.

In commenting on the phrase "undue hardship", the court in *In re Frech, Id.* at 243 stated as follows:

Several Courts have noted:

"... mere financial adversity without more will not do ... the point is that Congress meant the extinguishment of student loans to be an available remedy

---

1. The Department of Education promulgated regulations which require schools that prepare students for a particular trade, vocation, or career field to present prospective students with employment information. A school participating in the GSL program must present each prospective student with a written statement that describes the percentage of former students employed in positions directly related to their enrollment at the school. The statement must also include former students' average starting salaries. *See* 34 C.F.R. § 682.602(b)(1) (1983).

2. The Court noted that it would apply a different analysis in determining whether a loan under the Health Education Assistance Loan Act, 42 U.S.C. § 294f, et seq. ("HEAL") may be discharged, because it was apparent to the Court that in enacting the HEAL exclusion from discharge even in a Chapter 13 unless certain conditions are met. Congress indicated a desire to prevent discharge, entirely as to a certain class of debts, i.e. loans incurred by doctors who were trying to avoid medical-school debts, *citing In re Gronski*, 65 B.R. 932, 936 (Bankr.E.D.Pa. 1986).

to those severely disadvantaged economically as a result of unique factors which are so much a part of the [debtor's] life, present and in the foreseeable future, that the expectation of repayment is virtually non-existent unless by the effort the [debtor] strips himself of all that makes life worth living."
*In re Briscoe,* 16 B.R. 128, 131 (Bankr.S. D.N.Y.1981), quoting from *In re Kohn,* 5 B.C.D. 419, 424 (Bankr.S.D.N.Y.1979). A debtor does not establish undue hardship by proof that continuing responsibility for student loans would bring about "an unpleasantness," or a "garden-variety hardship." *In re Lezer,* 21 B.R. 783 (Bankr.N.D.N.Y.1982); *In re Ford,* 22 B.R. 442 (Bankr.W.D.N.Y.1982); *In re Love,* 33 B.R. 753 (Bankr.E.D.Va.1983); *In re Brunner,* 46 B.R. 752 (S.D.N.Y. 1985). The hardship which would result from nondischargeability of student loans must be long-term. *In re Bowen,* 37 B.R. 171, 172–3 (Bankr.M.D.Fla.1984); *In re Goldman,* 48 B.R. 364 (Bankr.S.D. N.Y.1985). The Court must find "the certainty of hopelessness [of payment], not simply a present inability to fulfill financial commitment." *In re Briscoe* at 131; *In re Brunner* at 755. *See also Perkins v. Vt. Student Assist. Corp.,* 11 B.R. 160, 162 (Bankr.D.Vt.1980); *In re Norman* [25 B.R.] at [545] 549 [ (Bankr.S.D.Calif.1982) ]. While this standard may seem draconian, Congress imposed the "undue hardship" requirement for discharge at least in part because government-granted or -insured educational loans are not strictly analogous to debts incurred in the consumer economy. The legislation creating the various student loan programs bars loan-granting institutions from applying more traditional standards for evaluating of credit-worthiness; it also locks lenders into fixed and relatively low interest rates. "In return for giving aid to individuals who represent poor credit risks, it strips these individuals of the refuge of bankruptcy in all but extreme circumstances." *In re Brunner* at 756. Thus, the Courts have denied discharge of student loans even in cases where a debtor's

alleged household expenditures exceeded current income, so long as that income was something in excess of the poverty level, and the debtor had the real prospect of future income increases. *See e.g., In re Lezer; In re Springer,* 54 B.R. 910 (Bankr.D.Neb.1985).

And as the Court in *In re Brown,* 18 B.R. 219, 222 *supra,* observed: The Code does not define "undue hardship" ... it seems universally accepted however, that "undue hardship" contemplates unique and extraordinary circumstances, mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

Undue hardship has been held to be not based on a present inability to pay ... but rather should be based on a "certainty of hopelessness" that future payments cannot be made. *In re Ballard,* 60 B.R. 673, 674–675 (Bankr.W.D.Va.1980).

In *In re Andrews,* 661 F.2d 702, *supra,* the court held it was improper for the bankruptcy court to determine that the debtor would face undue hardship if required to repay her student loan without considering information concerning the debtor's reasonable living expenses and whether she was able to repay her loan out of her estimated income.

The mere failure to make a minimal payment on a student loan does not prevent a finding of good faith where the debtor never had the resources to make payment. *In Shoeberg,* 41 B.R. 684, 668 (Bankr.D. Minn.1984); *In re Birden,* 17 B.R. 891, 894 (Bankr.E.D.Pa.1982).

Some courts have noted that the greater the time span between the leaving of school and the filing of the petition, the weaker the policy interest becomes in making the educational loan non-dischargeable. *In the Matter of Love,* 28 B.R. 475, 478 (Bankr.S. D.Ind.1983); *In re Savercool,* 51 B.R. 180, 182 (Bankr.W.D.N.Y.1985); and, it has been held that in calculating the ability to repay the court should consider the longest allowable repayment period and the corresponding lowest amount of repayment. *Matter of Manion,* 61 B.R. 815, 817 (Bankr.W.D.Pa.1986).

As noted above, many courts focus on the policy test. *See e.g., In re Ford*, 22 B.R. 442 (Bankr.W.D.N.Y.1982). In considering the congressional intent the *Ford* court stated:

"The legislative intent behind the student loan exception to discharge indicates a Congressional concern for those cases of abuse of the bankruptcy laws by former students whose motivation in seeking relief was primarily to avoid payment of their education loans. See Report of the Commission on the Bankruptcy Laws of the United States Report, H.R.Doc. No. 93–139, 93d Cong., 1st Sess. Pt. 11 140, n 14 (1973)."

*Id.* at 444.

In commenting on this policy test, the court in *In re Price*, 25 B.R. 256 (Bankr.W. D.Mo.C.D.1982) noted as follows:

The focus on the congressional intent that is a part of the policy test allows a court to analyze the application of the undue hardship concept while still considering the overall fresh start policy of the Bankruptcy Code. Factors such as the percentage of the total indebtedness represented by the student loan(s), whether the education enabled or would enable the debtor to obtain substantially higher income and the total amount of the student loan are circumstances that will bear on the court's findings under the policy test.

*Id.* at 258.

The Court in *In re Bryant*, 72 B.R. 913, 916, *supra*, in an attempt to provide a more objective test rejected the policy factors of *In re Johnson, supra*, and applied certain federal poverty guidelines to determine undue hardship. Federal Regulations provide that the Department of Health and Human Services issue and update poverty income guidelines on an annual basis, which guidelines are used as a criterion by a number of federal assistance programs. The *Bryant* Court thus took judicial notice of the "Preliminary Estimate of Poverty Thresholds in 1986" published by the Bureau of Census, January 22, 1987, and the federal poverty guidelines published in volume 52, Number 34, page 5430 of the Federal Register on February 20, 1987 pursuant to Fed.R.Evid. 201(b), *citing, Mitchell v. Rose*, 570 F.2d 129, 132 n. 2 (6th Cir.1978), *rev'd on other grounds*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) where it was held the Court could take judicial notice of census figures. The only variation made by the Court was that it used "net income" rather than "gross income" in applying the test, "gross income" being defined as "total annual cash receipts before taxes from all sources" 52 Fed.Reg. § 340 (Feb. 20, 1987); 45 C.F.R. § 1060.2–2(d)(1) (1986). The *Bryant* Court held that since these poverty guidelines are used as an eligibility criterion for federal assistance programs such income levels are viewed as being bare subsistance levels which cause such persons as being deemed incapable of affording to pay certain necessary services, "undue hardship" exists where the debtor does not have income substantially greater than these guidelines. The *Bryant* Court added that only if a debtor's income is substantially greater than the poverty guideline would it become necessary for the Court to evaluate the myriad of factors and circumstances which the courts presently examine.

In order to fashion a judgment to meet the equities of the case, some courts have held student loans non-dischargeable but have ordered the debtors to make certain limited payments on the loans. *See e.g., In re Love*, 33 B.R. 753 (Bankr.E.D.Va.1983) (Court deferred payments until date two years in future or when Debtor's children graduate from college); *In re Littell*, 6 B.R. 85 (Bankr.D.Ore.1980) (Court ordered each spouse to pay $10.00 monthly on a portion of the debt), *In re Albert*, 25 B.R. 98 (Bankr.D.Ohio 1982) (Court set up a detailed payment schedule); *In re Archie*, 7 B.R. 715 (Bankr.E.D.Va.1980) (Court revised repayment schedule to lessen financial burden of monthly payment). *In re Hemmen*, 7 B.R. 63 (Bankr.N.D.Ala.1980). (Debtor ordered to apply all net income over $3,600.00 per year to student loan for a period of five (5) years); *In re Densmore*, 8 B.R. 308, 3 C.B.C.2d 471 (Bankr.N.D.Ga. 1980) (Court set up revised payment schedule in judgment and prohibited enforce-

ment of judgment if payments were made as agreed).

An argument can certainly be made that the Court has the power to enter such judgment pursuant to § 105(a) rather than applying a "all or nothing at all" standard, although nothing in § 523(a)(8) provides for more than a ruling on dischargeability. However, this Court is reluctant to enter such a judgment which can be tantamount to involuntarily converting the debtor's case to a Chapter 13 case. *See In re Bryant*, 72 B.R. 913, 923, n. 6, *supra.* The Debtor not the Court should decide if he wishes to file a Chapter 13 case, and affect a composition or extension of nondischargeable debt. In addition, this Court fails to see where it has the power to modify or reform the terms of the loan instrument if nondischargeability is found as this is not a "cramdown" situation.

■ However, the Court is given the power under § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court thus holds that although it cannot modify the terms and conditions of any educational loan found to be nondischargeable, it may, in the judgment, order that the automatic stay which would otherwise be vacated remain in effect for a period of time to give the Debtor additional "breathing room", post-discharge, based on the prospects that he will have sufficient net income in the reasonably foreseeable future to repay an educational loan, although he may not have such net income at the time of the judgment.

After evaluating the relevant case law, the Court declines to adopt the three-part test of *In re Johnson*, 5 B.C.D. 532, *supra.* The policy tests read into § 523(a)(8) by the *Johnson* Court as to whether the education benefited the Debtor, whether the dominant motive for filing the bankruptcy was to discharge the student loan and by analyzing the amount of student loan debt, the percentage of total debt allocated to student loans, goes beyond the language of the statute, and requires the Court to often indulge in all kinds of conjecture and spec-

ulation which often leads to conflicting and inequitable results based on many subjective factors.

■ The only true policy guidelines relating to student loans, other than the requirement of "undue hardship" rather than simply "hardship", is expressly spelled out at § 523(a)(8) which permits the discharge to any educational loan which first came due before five years (exclusive of any applicable suspension of the requirement period) before the date of the filing of the petition. Thus, the Court will not read in to the statute any other policy considerations. The Court holds that a simple economic, ability-to-pay in the future test based upon the debtor's estimated future income and expenses is the standard that should be applied. Thus, the Court holds that the nature of the Court's inquiry should center on the mechanical test and good faith test of whether expenditures have been minimized, resources have been maximized, and efforts have been made to obtain employment, as enunciated by the *Johnson* court and not on the policy test. The Court also rejects the criteria of the *Kohn* court, *supra* as going too far and seems to employ an almost Draconian test going beyond undue hardship.

The Court also declines to adopt the federal poverty guidelines test used by the Court in *In re Bryant, supra.* To this Court this test, although a laudible effort to bring a greater degree of certainty to an otherwise murky area, does not leave enough flexibility in the Court, so that the necessary analysis can be made on a case-by-case basis given the peculiar facts and circumstances of each case.

The mechanical and good faith tests set out by the *Johnson* Court and the test set out in the *Bankruptcy Commission Report, see* pages 5 and 6, *supra,* appear to this Court to be a most objective and forthright tests to be applied and, although admittedly, the determinations that the Court must make in each case are so fact-intensive the application of this test may culminate in some seemingly inconsistent results, nevertheless, this Court is of the opinion that the educational benefits that

may flow to the debtor as a result of the use of the proceeds of a student loan should only be taken into consideration by the Court as to whether the debtor has the present or potential ability to repay the loan. The fact that the debtor resorts to his statutory right to file a bankruptcy and to discharge his debts, which may include student loans, where the primary motive for filing is to discharge a student loan or loans or where the debtor has a large percentage of debt allocated to student loans should not in itself bar a discharge. The question should be whether the debtor will suffer an undue hardship if such loans are not discharged. The debtor should not be penalized for invoking his statutory rights to file a Chapter 7 by including as an element as to the dischargeability of a student loan the primary intention or purpose of the debtor in filing bankruptcy, i.e. the discharge of such a loan.

In a Chapter 7, there is no good faith requirement, other than in the form of the "substantial abuse" provision of § 707(b), which is not in issue here. Thus, as long as the debtor accurately completes his petition, schedules and statements, and submits all his non-exempt property to the trustee, it does not appear that a student loan should be nondischargeable by judicial fiat on a policy basis. That the intention of the Debtor was to discharge a student loan, which he had a right to do, unless it is shown that no undue hardship will result if he has to pay the same, should not in itself bar discharge.

Accordingly, the Court will restate the test as set out by the *Commission Report, supra,* in terms of enumerated factors or elements so that the standard which the Court will apply is clarified.

In order to determine whether a student loan should be dischargeable because of undue hardship, the Court will consider the following:

1. A reasonable estimation of the rate and amount of the debtor's future resources in terms of the following:

A) The ability to obtain, retain and continue employment and the rate of pay that can be expected.

B) Any unearned income or wealth which the debtor can be expected to receive.

2. Whether the total amount of income, its reliability and periods of its receipt are adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capabilities, as well as pay the educational debt.

In addition, the mechanical and good faith tests of the *Johnson* court will be applied.

The Court must take judicial notice of, and examine the debtor's record in the main case and determine what percentage of the debtor's pre-petition debt was dischargeable in the bankruptcy, i.e. to what extent did the discharge give the debtor a fresh start. Thus, the Court will determine what secured claims were reaffirmed, or if not reaffirmed, the extent to which property retained by the debtor is subject to non-voidable liens, and thus to what extent the debtor has unencumbered remaining assets which could be liquidated to pay the student loan in question. The Court will not exclude any property merely because it is exempt in making this evaluation. In addition, what pre-petition priority taxes are not dischargeable, and whether any other indebtedness has been held to be nondischargeable under 11 U.S.C. § 523, as well as what post-petition debts have been accumulated by the debtor may be considered in arriving at its decision.

Inasmuch as the lender has given no indication as to whether it would accept periodic payments on a workout basis if the loan were held to be nondischargeable, the Court must also consider that the normal practice for the lender would be to accelerate the note, (if such a clause exists therein), if it did not already do so pre-petition, and that a judgment for the full amount of principal and interest, plus allowable attorney fees, would be entered and the debtor's wages would be garnished or execution would issue on non-exempt property. Pursuant to Indiana law the debtor's post-petition wages would be subject to garnishment on the following basis:

Twenty-five percent (25%) of his disposable earnings for a week; on the amount by which his disposable earnings for a week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 U.S.C. § 206(a)(1), whichever is less. (This section is derived from the Federal Consumer Credit Protection Act: 15 U.S.C. §§ 1672, 1673). I.C. 24–4.5–5–105.

Thus, the Court must consider the impact a maximum garnishment under Indiana law would have on the debtor and whether this would create an undue hardship by leaving insufficient monies to support the debtor and his dependents.

■ The Court now turns to the case at bar and will apply the mechanical and good faith tests as set forth by the *Johnson* court, together with the test set out by the *Bankruptcy Commission Report* without reference to the policy test.

The Debtor, is 31 years of age and appears to be in good health. He has three minor dependent children and a wife.

The Debtor has apparently discharged all other general unsecured debt and has not reaffirmed any secured debt. None of his chattels are unencumbered per his schedules and were claimed exempt by the Debtor. These exemptions were not challenged by the trustee, leaving his admittedly somewhat meager chattels free and clear of all liens. It is noted that these chattels include a 1969 PMC Mobile home and 1979 Sea Nymph boat valued at $3,000.00 and $750.00 respectively. While these items are certainly no indication of the Debtor having shed himself of all debt and emerged from his bankruptcy with ownership of "luxury" items, they certainly do not qualify as necessities when the test for discharge is "undue hardship". It is also clear that even if the values assigned to these items are inflated (the normal procedure would be to underestimate the value of these items for exemption purposes, or at the very least place their value at the lower end of the scale), these items could be liquidated and sold or encumbered and the proceeds used to pay this student loan

without imposing an undue hardship on the Debtor and his dependents.

The Court, in so finding, is aware that if a judgment is entered versus the Debtor, assets that are allowed as exempt in his bankruptcy cannot be levied upon post-judgment pursuant to § 522(c)(1). Nevertheless, this Court feels that these assets should be considered in determining if the Debtor has the wherewithal to pay this student loan without undue hardship.

In addition, even if these items of personalty were not available to generate funds to liquidate this debt, the Debtor's overall income and expenses indicates he has the present financial wherewithal, as well as future ability and prospects, to liquidate this loan without undue hardship. The Debtor's Statement of Income and Expenses reflected a take home pay of $1,200.00 less $894.00 in monthly expenses for a surplus of $306.00. Although, there are no glaring indications that the Debtor's expenses have not been minimized, or that the Debtor's financial problems were brought on by factors that he had the clear ability to control, the Debtor's testimony at the trial unexplainedly increased the Debtor's expenses from $25.00 to $175.00 a month for clothes and transportation expenses from $80.00 a month to $150.00 a month. The Court does not relish being placed in a position of being an arbiter of a Debtor's life style, behavior patterns or life style, by doing a line-item review of income, expenses and available unencumbered assets; however, these substantial increases with no showing of a change in circumstances severely tests the Debtor's credibility, and if the figures are correct, they would indicate excessive sums are being paid for transportation, while, even assuming the clothing expense is reasonable that expense together with the other enumerated expenses, would not result in *undue* hardship in repaying this obligation.

Finally, although the Debtor's prospects for obtaining another vocation that would bring greater financial rewards is not great, it is clear that given his seniority with Inland of 9 years, the fact that he grossed $21,800.00 in 1986, and that he has

a projected income of $21,800.00 for 1987, reveals that the Debtor has reasonable prospects that he has the ability to retain permanent employment, and that his rate of pay will at least be the same, to be adjusted upward in the future for time-in-grade and seniority, and for normal costs-of-living increases that will undoubtedly be forthcoming.

As a consequence, the Court finds this student loan will not impose an undue hardship on the Debtor. It is therefore,

ORDERED, ADJUDGED, AND DE-CREED, that the indebtedness of the Debtor to the Defendants herein is not discharged in his bankruptcy.