**In the Matter of Michael Joseph HEMMEN, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Michael Joseph HEMMEN, Defendant.**

**Bankruptcy No. 80–02089.**

**AP 80–0701.**

United States Bankruptcy Court,
N. D. Alabama, S. D.

Oct. 30, 1980.

George C. Batcheler, Asst. U. S. Atty., Birmingham, Ala., J. Vincent Low, Atty., Birmingham, Ala., for plaintiff.

John P. Whittington, Trustee, Birmingham, Ala.

Michael Joseph Hemmen, Debtor.

Jack Rivers, U. S. Trustee, Birmingham, Ala.

OPINION AND ORDER

STEPHEN B. COLEMAN, Bankruptcy Judge.

The Federally Insured Student Loan Program instituted by Congress in 1965 has

opened the door for millions of young Americans to higher education and college degrees who never had the opportunity before. The program has been a boon to Universities and other institutions by increased enrollment and needed financial assistance.

However, despite its beneficent purpose it has its darker side. Some individuals have financed their education and upon graduation have filed petitions under the old Bankruptcy Act and obtained a discharge without any attempt to repay the educational loan and without the presence of any extenuating circumstances.

The Commission on the Bankruptcy Laws of the United States was established by Public Law 91–354, effective July 24, 1970. At the conclusion of its work, and on the date on which its existence was to terminate under the statute creating it, July 30, 1973, the Commission filed its report with the Congress. Part I of the report contains recommendations for revision of the Bankruptcy Laws of the United States.

Evidence came to the Commission's attention of the abuse of the discharge provision in the Bankruptcy Act by individual debtors in the case of educational loans. After hearing testimony, the Commission was of the opinion that the widespread use of bankruptcy to avoid payment of an educational loan without any real attempt to repay the loan was not only reprehensible,

but that the practice posed a threat to the continuance of educational loan programs. The Commission recommended to Congress that in the absence of hardship, educational loans be non–dischargeable unless the first payment fell due more than five years prior to the petition in bankruptcy.[1]

Congress, in an effort to devise a formula to meet the demands of the Commission and pressure groups, inserted in the Bankruptcy Code a provision relating to student loans.[2]

This provision has created new problems for the Bankruptcy Courts. Three of the most common are: the definition or standard of "undue hardship;" the procedural aspect of whether a creditor must seek a ruling of non–dischargeability in the bankruptcy proceeding itself; and the problem of determining just when the loans actually come due. In this case, we are concerned with the definition of "undue hardship."

The words "undue hardship" are not defined by the Code, but are words of art, and are left to the discretion and judgment of the Court.

Should there be some guidelines for the Courts to follow in their discretion? Some Courts have found some guidelines in the legislative history of the Code.

While the legislative history of 11 U.S.C. § 523(a)(8) does not refer to the rationale underlying the section, the Senate Report indicates an intent to follow prior law.[3]

1. Collier on Bankruptcy, 15th Edition Appendix Volume Z, p. 170 (1980).

2. The Code provides in 523(a)(8): "A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt–
' "(8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless–
' "(A) such loan first became due before five years before the date of the filing of the petition; or
' "(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." '
11 U.S.C. § 523(a)(8).
The legislative history to this section indicates that:

' "Section 523(a)(8) represents a compromise between the House bill and the Senate amendment regarding educational loans. This provision is broader than current law which is limited to federally insured loans. Only educational loans owing to a governmental unit or nonprofit institution of higher education are made non-dischargeable under this paragraph." ' 124 Cong.Rec. H 11,095–6 (Sept. 28, 1978); S 17,-412–13 (Oct. 6, 1978); 1979 Collier Pamphlet Edition, Part 3, pp. 238–244 (1979).

3. The law to which the Senate Report refers is 20 U.S.C. § 1087–3. The purpose of this law is explained as follows:
' "The amendment was adopted in the light of testimony that the bankruptcy rate involving student loans has increased significantly in the last several years and that in some areas of the country students are being counselled on filing

This indicates the primary purpose was to prevent a specific perceived abuse, i. e., the filing of bankruptcy shortly after graduation for the primary purpose of discharging student loans. Congress apparently felt that *any* bankruptcy filed within five years after graduation had the earmarks of such an abuse.

Provision was made for exceptions to non–dischargeability to prevent "undue hardship." How to determine whether the facts of a particular case fit within the rationale of this exception was stated by the Bankruptcy Commission:

"In order to determine whether non–dischargeability of the debt will impose an 'undue hardship' on the debtor, the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents at a minimal standard of living within their management capability, as well as to pay the educational debt." *Communication from the Executive Director, Commission on the Bankruptcy Laws of the United States*, H.R.Doc.No.93–137, 93rd Cong., 1st Sess. Pt. II (1973) 140–41, n. 17. *In Re Bell*, 5 B.R. 461 (Bkrtcy.N.D.Georgia 1980) (Drake, B.J.)

The reported cases tend to use the factors listed by the Bankruptcy Commission.

In *Connecticut Student Loan Foundation, Inc. v. Bagley*, 4 B.R. 248, 2 C.B.C. 251 (Bkrtcy.D.Ariz.1980), the Court cited *In Re Matthews*, C.C.H. Bankruptcy Law Reports, Vol. 3, § 67,049, pp. 77, 1010 (D.C.Conn.1979), to determine the issue of undue hardship. In *Matthews* the Court

listed criteria for determining undue hardship: (1) if the debtor has any accumulated wealth or any prospects of acquiring any; (2) what the debtor's chances are of obtaining and retaining steady employment and what income can be expected; (3) the amount the debtor will need to maintain a minimal standard of living; and (4) if there would be anything left from the estimated income to allow the debtor to make some payments without reducing what is needed to live on. Applying this criteria the Court in *Bagley* granted discharge of the student loan because of the undue hardship, noting the debtor's near welfare level of living and her inability to pay her monthly expenses.

This criteria is almost identical to what the Bankruptcy Commission proposed in its report to the Congress. In another case, *In the Matter of Lonzo [Lonzo]*, 1 B.R. 722 (1979), the Bankruptcy Court held that where the debtor's net pay as a policeman was $1,010 per month and the total expenses for himself, his wife and four children exceeded $1,250 per month, payment of a $1,000 student loan would be an undue hardship and therefore dischargeable. The rationale of the Court, after reciting the facts of more debts and expenses, was that the accounting courses which were taken as a result of the student loan did not appear to have improved the debtor's position in his present employment as a policeman nor did it appear that the debtor's earning capacity *in the foreseeable future* would be enhanced to any extent because of the educational value of these courses. Therefore, the Court did not find that the debtor benefitted financially from the education which the loan helped to finance. From this reasoning plus the fact that the debtor had other pressing debts, it was apparent that the dominant purpose

for bankruptcy to discharge their obligations to repay guaranteed loans. The Committee notes that in most circumstances a student may leave school with several thousand dollars in student loans and no assets, thereby making the student technically eligible to declare bankruptcy.

The amendment, by waiting five years, would offer a more realistic view on the student's ability to repay a student loan." ' H.R.Rep.No. 1232, 94th Cong., 2nd Sess. (1976) 13–14. *In Re Bell*, 5 B.R. 461 (Bkrtcy.N.D. Georgia 1980) (Drake, B.J.).

of the debtor's bankruptcy petition was not simply to discharge the student loan. (Emphasis added.)

This case does not appear to have relied on the Commission's factors, but from the rationale of the Judge that the debtor did not *benefit* from the loan. The Judge used his discretion in this case rather than factors to enhance the debtor's "fresh start."

There are clear cut cases where the Court can say one debtor can afford to pay and another cannot. A classic hardship case is found in the case of:

*In the Matter of Carol A. Diaz,* 5 B.R. 253 (Bkrtcy.W.D.New York, 1980) 2 C.B.C. 501 (Hayes, B.J.), where a Chapter 7 debtor sought discharge of her student loan. The only disputed issue was whether excepting the debt from discharge would impose an "undue hardship" within the meaning of that phrase in the Bankruptcy Code's provision dealing with discharge of student loans. The debtor's monthly expenses exceeded her income, which was limited because physical problems made it impossible for her to work more than a half a day. The debtor needed a hearing aid and an operation, neither of which she was able to afford. Among other serious illnesses, the debtor had suffered a heart attack, had an alcoholic problem and had been hospitalized for psychiatric difficulties. The debtor was divorced from her former husband who was confined to a mental clinic. She had four children of whom one required dental work and psychiatric care, neither of which had been provided because of lack of funds. After listing the debtor's family and health problems and the fact that she was spending more each week than she took in, the Court ruled that it would work an undue hardship upon both the debtor and her dependents to except the debt from discharge.

While this is a classic case, what factors should guide decisions in non–classic cases? Should undue hardship, due to unemployment, be treated differently from hardship arising from illness or permanent disability?

In the case before this Court, the debtor has no accumulated wealth. He recently obtained a divorce and his wife got everything. He has no savings account and only $40 in his checking account. He lives with his parents and pays them $60 per month room and board. He is unemployed and has made several unsuccessful attempts to obtain a job. He does not have a car. He only has three years of college with Business Administration as his Major. He receives $90 per week unemployment. He owes $4,039 plus interest on several educational loans. The total unsecured debt less the educational loans is over $13,000. While this loan is not the main debt, it is a substantial part of it. It seems that a discretion exists in the Bankruptcy Court to determine the remedy of undue hardship resulting from temporary lack of income, which by its nature can ameliorate or change. Unemployment or inability to earn is the most common casualty together with divorce, separation, and illness, both mental and physical. Unemployment is a status that requires some consideration and critical examination, even where it is not the result of the debtor's own disinclination or lack of effort.

But circumstances may change. Permanent disability and disaster may occur rendering a blow to his plans and dreams. Unemployment or inability to earn can be cured by a change in the economy and the creation of jobs which we hope will soon occur. Unemployment is a status that requires some consideration and critical examination, even where it is not the result of the debtor's own disinclination or lack of effort. Unemployment is always possible but can be followed by employment.

Unemployment coupled with the other factors in this case causes the debtor to live in an almost poverty level style of living, but the chances of his obtaining a job are very real. Employment is always possible.

One of the main purposes of the Bankruptcy Code is to provide a "fresh start" for the debtor. If unemployment continues for an indefinite time period, to require the debtor to repay this debt might frustrate

the "fresh start" policy of the Code; however, the purpose of education is to enable the student to fit himself for a better life and a better ability to earn and produce. Here three years of college might help the debtor *obtain* a job whereas in the *Lonzo* case, the loan did not help the debtor in his present job at all.

This is a temporary lack of income rather than permanent. The Court therefore thinks that supervision of the judgment for a short term of years, with an adjustment of payments according to some formula related to income to be earned in the future.

Applying this formula and the principles announced to the facts in this case, the Court finds that undue hardship exists because of the very low earnings of the debtor and his lack of employment and inability to find a job paying a living wage. He is capable of earning considerably more, in which event he should pay.

The Court will by separate order render judgment in favor of The UNITED STATES OF AMERICA for the principal amount of $4,039.46 plus interest in the amount of $203.95 as of August 1, 1980, making a total of $4,243.41, and interest thereafter on the principal at 7% per annum until paid but provide that the judgment may be discharged and satisfied if the debtor uses his best efforts to find suitable employment in a reasonable length of time and pays and applies on the judgment all funds received by him over $3,600 per annum, after taxes, to the payment of the judgment for the period of five years from the maturity of the last loan made by him with this creditor.