**In re Joan BRISCOE, a/k/a Joan Bennett, a/k/a Joan Akers, Debtor.**

**Joan BRISCOE, a/k/a Joan Bennett, a/k/a Joan Akers, Plaintiff,**

**v.**

**BANK OF NEW YORK and New York State Higher Education Services Corporation, Defendant.**

**Bankruptcy No. 81 B 10442.**

United States Bankruptcy Court,
S. D. New York.

Dec. 22, 1981.

John L. Edmonds, New York City, for debtor/plaintiff.

Frederick J. Schreyer, Albany, N. Y., Lipsig, Sullivan & Liapakis, P. C., New York City, for N.Y.S.H.E.S.C.; Thomas A. Holman, New York City, of counsel.

## DECISION ON "HARDSHIP" COMPLAINT TO DECLARE A STUDENT LOAN DISCHARGEABLE

BURTON R. LIFLAND, Bankruptcy Judge.

The debtor, Joan Briscoe, filed a Chapter 7 (liquidation) petition in bankruptcy on February 27, 1981 hoping to secure relief from current economic hardship. Debts totaling approximately $10,000.00, inclusive of educational loans, were scheduled. Recognizing that an order for relief, alone, left a gap in her goal of total debt absolution, the debtor attempted to close the circle by claiming undue hardship in a complaint to declare her student loan dischargeable in bankruptcy. 11 U.S.C. § 523(a)(8)(B).[1]

---

1. § 523 Exceptions to discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual from any debt—* * *

(8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—

The loan, taken to finance a college education, is the debtor's largest single debt and amounts to over $5,000.00. It is owed to the New York State Higher Education Services Corporation (NYSHEC) as guarantor, who is the defendant in this action. NYSHEC has counterclaimed and asks the Court to declare the loan nondischargeable and to enter a judgment in the amount of the outstanding loan, plus interest.

The sole issue in this case is whether the debtor's circumstances fall within the concept of "undue hardship". "The words 'undue hardship' are not defined by the Code, but are words of art, and are left to the discretion and judgment of the Court." *In re Hemmen*, 3 C.B.C.2d 140, 141, 7 B.R. 63, 64 (Bkrtcy.N.D.Ala.1980). Some guidance is provided by early legislative history.

Under a proposed provision of similar intent, the Commission on the Bankruptcy Laws advised that:

In order to determine whether nondischargeability of the debt will impose an undue hardship on the debtor the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No. 93–137, 93rd Cong., 1st Sess. Pt. II (1973) 140–41, n. 17 (discussing proposed § 4–506(8)); *Hemmen*, 7 B.R. at 65, 3 C.B.C.2d at 142.

A finding of undue hardship is reserved for the exceptional case and must be

(A) such loan first became due before five years before the date of the filing of the petition; or

based on more than *present* inability to pay. *In re White*, 6 B.R. 26, 29, 22 C.B.C. 989, 992 (Bkrtcy.S.D.N.Y.1980). However, the standard is not intended to "deprive those who have truly fallen on hard times of the 'fresh start' policy of the New Bankruptcy Code." *In re Lawson*, 10 B.R. 477, 479 (Bkrtcy.E.D. Tenn.1981). The courts have had no trouble in discerning the *exceptional* case that warrants a finding of undue hardship. *See e.g. In the Matter of Diaz*, 2 C.B.C.2d 501, 5 B.R. 253 (Bkrtcy.W.D.N.Y.1980) (debtor was impoverished, partially deaf, cardiac, former alcoholic, psychiatric in-patient, divorced from her institutionalized husband, with several children, some of whom require psychiatric and dental care); *In re Bagley*, 4 B.R. 248, 2 C.B.C.2d 251, 6 B.C.D. 404 (Bkrtcy.Ariz.1980) (acutely impoverished debtor and husband subsiding at welfare level, burdened with medical bills of a child with chronic respiratory illness whose condition requires the care of the debtor and impedes her gainful employment).

*In the Matter of Johnson*, 5 B.C.D. 532 (E.D.Pa.1979), Bankruptcy Judge Twardowsky fashioned a novel three-tier test to determine undue hardship.

A mechanical (checklist) test considers future financial resources of the debtor (including an analysis of rate of pay, wages and salaries earned, skills, sex, ability to obtain and retain employment, current employment status, employment record, education, health, access to transportation, and dependent children) and other sources of income or wealth, which is then matched against reasonable expenses to yield an estimate of typical, average monthly expenses. Extraordinary, nondiscretionary expenses (e.g. unique medical bills) are then factored in. If the court finds that financial resources are *not* sufficient to support the debtor and his dependents at a subsistence or poverty standard of living, as well as repay the student loan, it should proceed to examine good faith aspects, including

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; . . .

whether the debtor has made a bonafide attempt to repay the loan, and whether the debtor was negligent or irresponsible in conducting his financial affairs such that the debtor's misfortune is self-imposed and the conclusion drawn under the mechanical test should be altered. Lastly, if bad faith is found, there must be a presumption against discharge which can be rebutted only by finding that the debtor's dominant reason for filing was not eradication of substantial student loans and that the debtor has not benefited financially from the education financed by the loan.

The balancing required to determine undue hardship, or its absence, is, without doubt, difficult. The task is both objective and subjective. Notwithstanding, it is black and white that Congress did not intend relief for hardship alone, but that it must be "undue". And ... "mere financial adversity without more will not do. \* \* \* The point is that Congress meant the extinguishment of student loans to be an available remedy to those severely disadvantaged economically as a result of unique factors which are so much a part of the bankrupt's life, present and in the foreseeable future, that the expectation of repayment is virtually non-existent unless by the effort the bankrupt strips himself of all that makes life worth living." *In the Matter of Kohn,* 5 B.C.D. 419, 424 (Bankr.Ct.S.D.N.Y.1979).

■ In the instant case the hard facts are this. The debtor is a 36 year old woman. Her second husband abandoned her in January of 1981 (although she testified that she had recently located him). She has a 16 year old son from her first marriage who lives with his father and visits her on weekends.

Currently, she is employed by CBS Records at a bi-weekly, net salary of $437.35 (approximately $900 per month). However, she testified that this position was to be terminated on October 30, 1981, but that CBS was attempting to place her in one of its other divisions, and consequently, she was not seeking employment outside that company.

Debtor's major documented expenses are for rent—$468.21 per month; utilities—about $45 per month; and telephone—about $45 per month. She was unable to estimate her costs for food, clothing, transportation and household expenses. The debtor also supplements her first husband's support of their son, which amount varies with the boy's needs and her ability to contribute. The student loan in question requires a monthly payment of approximately $73.00.

■ I conclude that while the repayment of the debt might work a hardship on this debtor, because of the gap between her expenses and her income, it does not constitute "undue hardship" within the meaning of the statute. It is clear that this debtor's circumstances are not of a level encountered in the category of "exceptional" hardship cases. Nor are they sufficient to clear the successive hurdles suggested in *Johnson.* For the purposes of 11 U.S.C. § 523, the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment. This debtor's claim is pitched to current (or immediate future) inability to repay this otherwise non-dischargeable debt. This, without more, does not constitute undue hardship. The debtor is healthy, currently employed, skilled, and has no dependents or extraordinary, non-discretionary expenses. Moreover, there is the possibility of bright future prospects, support payments from her former husband, as well as the ability to retrench from present levels of spending.

For all the reasons stated heretofore, it is the finding of this Court that there are no exceptional circumstances which justify forgiveness of this debtor from liability on her indebtedness.[2] The debt in question is

---

**2.** Nothing in this opinion precludes the parties from reaching an accommodation regarding the amount and timing of payments in accordance with the debtor's changing financial circumstances. (A procedure consistent with the defendant's present policy expression to this Court.) The concern of the opinion herein is whether there shall be any repayment, not when or how it shall occur.

found to be nondischargeable with judgment to the defendant as prayed for in the counterclaim.

Submit an order.