**In re John Bruce SILLIMAN, Pamela Leah Silliman, Debtors.**

**John Bruce SILLIMAN, Pamela Leah Silliman, Plaintiffs,**

**v.**

**NEBRASKA HIGHER EDUCATION LOAN PROGRAM, Defendant.**

**Bankruptcy No. 92–3037.
Related No. 90–00699.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

June 4, 1992.

Randy L. Reeves, Lima, Ohio, for plaintiff.

Kenneth Baker, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on the Complaint to Determine Dischargeability of Debt. The Court has re-

viewed the evidence and arguments presented at Trial, as well as the entire record in this matter. Based upon that review, and for the following reasons, the Court finds Debtor John Silliman to be discharged of responsibility for the debt. The Court further finds that Three Thousand Dollars ($3,000.00) of the Six Thousand Seven Hundred Eleven Dollars and Thirty–Six Cent ($6,711.36) debt should be Non-dischargeable to Debtor Pamela Silliman.

## FACTS

On March 6, 1990, John and Pamela Silliman filed for Bankruptcy under Chapter 13 of the Bankruptcy Code. On December 3, 1991, upon Debtors' motion, the case was converted to Chapter 7 of the Bankruptcy Code.

In January, 1989, Pamela Silliman, the Debtor/Plaintiff, obtained two (2) student loans from the Defendant, Nebraska Higher Education Loan Program (hereinafter "NEBHELP"). The loans currently total Six Thousand Seven Hundred Eleven Dollars and Thirty–Six Cents ($6,711.36). Pamela Silliman obtained the student loans to facilitate the attendance of both herself and Debtor John Silliman at the MTA Truck Driving School. John Silliman's signature does not appear on the loan agreement.

On January 31, 1992, Debtors filed this Complaint seeking to have the student loans discharged. Debtors contend it would constitute undue hardship for them to pay back the loans. NEBHELP disagrees, contending that Debtors are young and in good health and would not be subject to any undue hardship if required to repay the student loan.

Pamela Silliman is twenty-seven (27) years old and testified at trial that she was in good health. She completed two years of college in addition to the truck driving school. She has one dependent, a one (1) year old son. She is currently employed part-time (fifteen (15) hours per week). She stated that there was nothing to prevent her from obtaining full-time employment in the future.

John Silliman is twenty-six (26) years old and testified at trial that he was in good health. He has a high school general equivalency diploma (GED) and is also a graduate of the truck driving school. Neither he nor his wife have ever obtained employment to utilize the education they received at the truck driving school. He has been unemployed for more than a year.

Debtors list their net income at Six Hundred Thirty-eight Dollars ($638.00) per month, including food stamps received from the State. Debtors also receive free medical care for themselves and their dependent from the State. Average monthly expenses are estimated at Eight Hundred Fifty-five Dollars ($855.00) per month, including Fifty Dollars ($50.00) in recreation expenses.

Pamela Silliman testified that she deferred payment on the student loans in question, but never made a payment to NEBHELP or ever contacted NEBHELP in an effort to reschedule payment on the loan. The loans in question constituted forty-one (41) percent of the Debtors' total debt at the time bankruptcy was filed.

## LAW

■ Debtor John Silliman's signature does not appear on either of the student loan instruments. Therefore, he has no responsibility to fulfill those obligations, and the student loans in question are discharged as to him. Ohio Rev.Code Ann. § 1303.03(A)(1) (Anderson 1979).

Debtor Pamela Silliman seeks to discharge her student loan obligations under Section 523(a)(8)(B) of the Bankruptcy Code, which states:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B) (1990).

■ There is a strong public policy against allowing the discharge of student loans in bankruptcy. *See*, H.R.Rep. No. 595, 95th Cong., 1st Sess. 132–33 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6093–94. This policy was best articulated in *In re Briscoe*, which stated that "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981). More than a current inability to pay is required to demonstrate the undue hardship necessary to allow discharge of a student loan. *In re Brunner*, 46 B.R. 752, 755 (Bankr.S.D.N.Y. 1985). The debtor must also demonstrate that their inability to pay will extend for a significant portion of the payment period of the loan. *Id.*

■ Neither the Bankruptcy Code or the legislative history behind 11 U.S.C. § 523(a)(8)(B) define undue hardship. The words "undue hardship" are terms of art, whose interpretation are left to the discretion and judgment of the court. *In re Hemmen*, 7 B.R. 63, 64 (Bankr.N.D.Ala. 1980). The court in *In re Johnson* developed a three-part test to determine the facts and circumstances necessary to constitute undue hardship. 5 Bankr.Ct.Dec. (CCH) 532, 539–45 (Bankr.E.D.Pa. June 27, 1979). Many courts have adopted this tripartite test which consists of a "mechanical" test, a "good faith" test, and a "policy" test. *Id.* This Court looks to all three tests, giving no element a particular weight, to determine dischargeability of a student loan.

■ Under the "mechanical" test, the court considers the debtor's current employment and income, future employment and income prospects, educational level and work skills, health, family support responsibilities, and the practical marketability of the debtor's work skills. *In re Frech*, 62 B.R. 235, 240 (Bankr.D.Minn.1986). The debtor bears the burden of showing that her income and other financial resources will not be sufficient to maintain her at a minimal or "poverty level" standard of living for the foreseeable future if the student loan is not discharged. *Id.* at 241.

■ Debtor Pamela Silliman does not meet the burden of proof with respect to the "mechanical" test. While her current employment and income are minimal, Debtor's prospects for future gainful employment are good. Debtor has no physical disabilities to prevent her from obtaining full-time employment. Her educational level and work skills make her an excellent candidate for employment. The burdens imposed by raising her child are not sufficient to offset her future earning potential.

■ Under the "good faith" test, the court considers whether the debtor is actively minimizing her current living expenses while maximizing her earning potential. *Frech*, 62 B.R. at 241. The court will also look at whether the debtor has made a bona fide attempt to repay the loan and whether the debtor's misfortune was self-imposed by mismanagement of her financial affairs. *Briscoe*, 16 B.R. at 131.

■ In the present case, Debtor does not meet this "good faith" test. In working only fifteen (15) hours per week, Debtor is not maximizing her earning potential. Debtor deferred the loan repayment once, but made no payments or even contacted the creditor in an attempt to reschedule the payments. There was a notable absence of good faith in Debtor's dealings with NEBHELP.

■ In applying the "policy" test, the court must determine whether allowing discharge of a given student loan would constitute abuse of the bankruptcy process. *Frech*, 62 B.R. at 241. The court will examine the percentage of indebtedness represented by the student loans to determine whether the dominant purpose of the bankruptcy was to escape liability for the student loan. *In re Brown*, 18 B.R. 219, 223 (Bankr.D.Kan.1982).

In the instant case, Debtor does not meet the requirements of the "policy" test. The student loans at issue represent forty-one (41) percent of Debtor's total indebtedness. This indicates that avoidance of the loan obligations to NEBHELP was a dominant purpose for the filing of this bankruptcy petition.

In its consideration of the "policy" test, the *Johnson* Court also examined the benefit the debtor derived from the education financed by the student loans in question. 5 Bankr.Ct.Dec. at 543–44. Several other courts have followed this pattern and considered the benefit derived from the education. *In re Connolly*, 29 B.R. 978, 982 (Bankr.M.D.Fla.1983); *In re Powelson*, 25 B.R. 274, 276 (Bankr.D.Neb.1982). This Court agrees with the Court in *Brunner* that consideration of this factor is not only improper, but antithetical to the spirit of the guaranteed student loan program. 46 B.R. at 755 n. 3. Consideration of this factor serves to punish institutions for forcing loans upon students which are not in their best interest. *Id.* This fails to consider that the burden is not borne by the institution, but by the taxpayers who will absorb the cost of the default. *Id.* The debtor must bear the burden of poor educational choices or underutilization of the education they have received.

With Debtor having failed to meet the requirements of any of the three tests, this Court finds no justification for granting Debtor's petition to discharge the student loans. However, the Court may determine that equity dictates reducing the amount of the nondischargeable debt, if the Court determines that undue hardship could result from requiring the Debtor to pay the entire amount. *In re Littell*, 6 B.R. 85, 89 (Bankr.D.Or.1980); *Brown*, 18 B.R. at 224. The Court may also revise the repayment schedule to lessen the financial burden of the monthly payments. *In re Archie*, 7 B.R. 715, 719 (Bankr.E.D.Va. 1982); *In re Webb*, 132 B.R. 199, 202–03 (Bankr.M.D.Fla.1991). In the instant case, the Court recognizes that Debtor cannot meet the necessary monthly payments to discharge the entire debt within the time dictated by the loan instrument. Nevertheless, Debtor has not demonstrated that undue hardship would result unless the entire loan was discharged.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the educational loans be, and are hereby, held to be DISCHARGEABLE as to Debtor John Silliman under Ohio Rev.Code Ann. § 1303.03(A)(1).

It is FURTHER ORDERED that Three Thousand Dollars ($3,000.00) of the Debtor's educational loans be, and are hereby, held to be NON–DISCHARGEABLE under 11 U.S.C. § 523(a)(8) as to Debtor Pamela Silliman.

It is FURTHER ORDERED that all of the remainder of the Debtor's educational loans and all interest be, and are hereby, held to be DISCHARGEABLE under 11 U.S.C. § 523(a)(8)(B).

It is FURTHER ORDERED that the parties submit to the Court, within fourteen (14) days, a schedule for repayment of the above debt within six (6) years of the date of this Order.