**In re Ronald L./Deborah F. RICE, Debtors.**

**Ronald L. RICE, Plaintiff,**

v.

**U.S.A., DEPT. OF HEALTH & HUMAN SERVICES, Defendant.**

Bankruptcy Nos. 92–3565, 92–31719.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Aug. 19, 1993.

Gordon R. Barry, Toledo, OH, for plaintiff.

Holly Sydlow, Toledo, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This matter came before the Court on Cross Motions for Summary Judgment on the issue of the dischargeability of certain Health Education Assistance Loan (hereafter "HEAL") obligations. Plaintiff claims that the provision governing discharge of his loan obligations is 28 U.S.C. 523. The United States contends that the applicable provision is 42 U.S.C. 294f(g). The Debtor further claims that under either provision, the loans should be discharged as imposing undue hardship or as being unconscionable. This Court has reviewed the written arguments of counsel, supporting affidavit and exhibits, applicable law and the entire record of the case. Based upon that review, and for the following reasons, the United States Motion for Summary Judgment is Granted in part and Denied in part, and the Debtor's Motion for Summary Judgment is Granted in part and Denied in part.

## FACTS

Plaintiff, Ronald Rice, executed promissory notes in 1979 and 1980 for two Health Education Assistance Loans, in the amount of Ten Thousand Dollars ($10,000.00) each. These loans were obtained while Plaintiff was enrolled in medical school. Plaintiff subsequently left medical school, for academic reasons, in the Fall of 1981, during his third year of school. Upon leaving medical school, Plaintiff was notified that repayment would be due October 1, 1983. Mr. Rice encountered continuing financial difficulties, and did not make the payments as scheduled. The loans continued to accrue interest. On December 19, 1989, a judgment was rendered for the United States of America in the amount of Sixty Thousand Five Hundred Twenty-six and 92/00 Dollars ($60,526.92) plus interest and costs. A total of One Thousand Six Hundred Four and 39/00 Dollars ($1,604.39) has been collected on this debt to date.

On May 1, 1992, Plaintiff filed a Chapter 7 Bankruptcy Petition. He was granted a discharge on September 14, 1992. On December 2, 1992, the United States filed an Application for a Writ of Continued Garnishment, alleging that the discharge was ineffective against the HEAL loans. As of November 2, 1992, the amount of Plaintiff's indebtedness had grown to Seventy-seven Thousand Six Hundred Ninety-four and 46/00 Dollars ($77,694.46). On December 9, 1992, Plaintiff filed a Complaint to Determine Dischargeability of the HEAL debts, as well as a Motion for a Temporary Restraining Order and Preliminary Injunction. The Defendant agreed to maintain the status quo regarding the debt, pending the outcome of this action.

Plaintiff contends that the debts in question are governed by Section 523(a)(8) of the Code and thus should have been discharged in the course of the Chapter 7. Plaintiff further contends that even should the alternative discharge provision, 42 U.S.C. 294f(g) be the applicable law, the HEAL obligations should be discharged as unconscionable. The Defendant responds that the more narrowly tailored provision, 42 U.S.C. 294f(g) is the controlling law, and that the Plaintiff's financial and family situation does not demand that the obligations be considered unconscionable.

The relevant issues in the case are:

(1) What is the controlling law regarding the dischargeability of the HEAL loans; and

(2) Should the loans be discharged as unconscionable?

### LAW

The two (2) provisions applicable to the discharge of educational loans are 523(a)(8)(b) and 42 U.S.C. 294f(g).

11 U.S.C. Section 523 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(8) for an educational ... loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship or stipend overpayment first became due more than seven years ... before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

42 U.S.C. 294f(g) provides:

A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of title 11 only if such discharge is granted—

(1) after the expiration of the 5–year period beginning on the first date, as specified in subparagraphs (B) and (C) of section 294d(a)(2) of this title, when repayment of such loan is required;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

### DISCUSSION

**I. Finding of Core Proceeding**

This case concerns the determination of dischargeability of a debt, and thus constitutes a core proceeding pursuant to 28 U.S.C. 157(b)(2)(I).

**II. Applicable Provision**

The Courts have consistently held that the provision applicable to HEAL loans is 42 U.S.C. 294f(g). *In re Cleveland,* 89 B.R. 69 (9th Cir.1988); *U.S. v. Wood,* 925 F.2d 1580 (7th Cir.1991). *In re Williams,* U.S.Bankr.Ct., S.D.Cal.B.R. Case 91–05776–LM7 (Nov. 19, 1992). The reasoning underlying such a choice of law is twofold; first, when two (2) statutes seem to overlap or partially conflict with each other, it is a generally accepted rule of statutory interpretation that the more specific statute will control. *Matter of Johnson,* 787 F.2d 1179, 1181 (7th Cir.1986); *Busic v. U.S.,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980), and second, where two (2) statutes seem to overlap or partially conflict, the more recently enacted or modified statute may control. *In re Hampton,* 47 B.R. 47 (Bankr.N.D.Ill.1985); *In re Johnson,* 5 B.C.D. 532 (Bankr.E.D.Pa.1979); *Davis v. U.S.,* 716 F.2d 418, 428 (7th Cir.1983).

Applying these maxims to the two (2) statutes at issue, it is clear that 42 U.S.C. 294f(g) is the controlling law. Section 294 deals with generally public welfare, and specifically addresses the dischargeability of health profession assistance loans; a category into which HEAL loans fall. Section 523

addresses educational grants and loans in general, and does not provide for as stringent requirements for discharge as Section 294. Further, Section 294 is "the more recently enacted statute" and thus takes temporal precedence over Section 523 as well. Plaintiff argues that if we read the *Hampton* Court's words literally, that Section 523 should control because it has been amended more recently than Section 294. The Court finds this argument unpersuasive. "Normally the fact that a statute is merely amended does not change the date of enactment and does not call into play the interpretation relied upon by the debtor." *In re Joyner,* 146 B.R. 232, 233 (Bankr.W.D.Mo.1992).

Clearly the theory underlying the practice of affording more deference to the more recently enacted or amended statute is that the changes made would be a more accurate reflection of current legislative intent. For example, 11 U.S.C. 523 was amended in 1984 by PL 98–353, subsequent to the date of enactment of the HEAL statute in 1981. "Nevertheless, courts have unanimously held that the HEAL statute rather than the Bankruptcy Code governs the dischargeability of a HEAL loan." *In re Joyner,* at 233. *See, In re Cleveland; U.S. v. Wood.*

Further, the legislative history of PL 101–647, shows that Congress did not intend to replace the more stringent HEAL discharge provision with the less demanding requirements of the Bankruptcy Code. To quote representative Jack Brooks (D.Tex.) ... 'Concern has been expressed that Section 201 might be construed to supersede the more programmed-specific dischargeability provisions contained in statutes such as the Public Service Health Act. But the legislative intention in passing Senate Bill 84 is that section 201 will cover only those debts which are now covered by Section 523(a)(8) of the Bankruptcy Code rather than by the more specific statutes. The dischargeability of loans and obligations, such as those entered into by under the Public Health Service Act would continue to be determined by the more programmed-specific statutes.'

*Joyner,* at 233 (citing, in part, H.R. 5891, 101 St. Congress, 2d Sess., 150–Part II, Cong. Rec. H13289 (daily ed. October 27, 1990)).

It seems clear in light of both specific legislative intent, as well as the overwhelming number of cases which have addressed this issue (only a few of which are cited here), that the applicable provision is 42 U.S.C. 294f(g).

A final argument advanced by Plaintiff is that Section 294 was in existence prior to 1979, but was repealed until 1981, when it was reinstated with even more stringent provisions than had previously existed. Plaintiff asserts that since his debts were incurred during this "down time", when only Section 528 was on the books, that Section 528 should apply to his loans. This Court disagrees. *In re Hampton* addressed this question directly. The petitioner in *Hampton* was a Chapter 7 debtor who had taken out a HEAL loan in 1980, during the same "down time" as the Plaintiff in this case. The petitioner in *Hampton* argued that to apply the more stringent statute retroactively would be a violation of his Fifth Amendment due process rights. The Court stated that there existed no property right in the right to a bankruptcy discharge provision of a contract, and that this or any discharge in bankruptcy was a statutory privilege granted by Congress pursuant to its Article I, Section 8, Clause 4, powers. The Court concluded that 42 U.S.C. 294f(g) was the controlling provision, and this Court reaches the same conclusion.

This argument might have been persuasive if the Bankruptcy Code and other United States Code discharge provisions were construed to exist in order to govern the interpretation of contract terms. They do not, however, exist for this purpose. Their purpose is to effectuate the will of the legislature in the exercise of its Article I, Section 8, Clause 4, powers, which include excepting certain debts from discharge. One debt which has been so excepted is any HEAL loan obligation, unless certain conditions are met. Congress has declined to extend the privilege to this area at this time; it is important to recognize that discharge in bankruptcy is a privilege, not a right. *Stell-*

*wagen v. Clum,* 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918).

### III. Unconscionability

Under Section 294, a HEAL loan obligation can be discharged only if three (3) criteria are fulfilled:

> (1) after the expiration of the 5–year period beginning on the first date, as specified in subparagraphs (B) and (C) of section 294d(a)(2) of this title, when repayment of such loan is required;
>
> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and
>
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

In this case, it is not in dispute that conditions one (1) and three (3) have been met. The only remaining issue is whether the nondischarge of the debts would be "unconscionable". In order to properly analyze the issue of unconscionability of the obligation, it is necessary to state additional facts in this case.

Debtor is thirty-nine (39) years old and married. He works full-time as a teacher in the Toledo Public School System, and his wife works full-time as an administrator at a state university. Their total gross monthly income is Five Thousand Twenty-one and 11/00 Dollars ($5,021.11). The Debtor has three (3) children, ages ten (10), seven (7) and four (4), and the entire family is in good health. The Debtor and his wife purchased a house upon which a mortgage exists for approximately Fourteen Thousand Dollars ($14,000.00). The family owns a 1976 Dodge, which does not run, and a 1987 minivan, upon which they make monthly payments of Three Hundred and Seventy Dollars ($370.00)[1]. Having just gone through a Chapter 7, Debtor is otherwise free of indebtedness with the exception of the house and car mortgages; Four Hundred Dollars ($400.00) in post-discharge medical bills; and any other post-discharge debts he may have incurred. This survey of debts does not include, of course,

the HEAL loans at issue here, as their disposition has yet to be determined.

The definition of unconscionability, or even that of undue hardship, the lower standard, is elusive at best. Such words are terms of art, whose interpretation is generally best left to the discretion and judgment of the Court. *In re Hemmer,* 7 B.R. 63, 64 (Bankr. N.D.Ala.1980). Although neither the words of the statute, nor its legislative history define exactly what constitutes undue hardship or unconscionability, some judicial interpretation does exist. The Court in *In re Hines,* 63 B.R. 731, 736 (Bankr.D.S.D.1986), defined unconscionability as that which is "lying outside the limits of what is reasonable or acceptable, or shockingly unfair harsh or unjust." This standard is a very weighty one indeed, being significantly more burdensome than the undue hardship test dictated by Section 523. In this case, the Plaintiff fails to meet even the lesser standard of proof, and thus clearly does not carry the burden of unconscionability.

 In the past, this Court has used a three (3) part analysis to gauge undue hardship. *In re Silliman,* 144 B.R. 748 (Bankr. N.D.Ohio 1992); *In re Bakkum,* 139 B.R. 680 (Bankr.N.D.Ohio 1992); *In re Hawkins,* 139 B.R. 651 (Bankr.N.D.Ohio 1991). This test, first set down by the Court in *In re Johnson,* combines three (3) types of analysis in assessing undue hardship: a mechanical test, a good faith test, and a policy test. *In re Johnson,* at 539–45. In applying this tripartite test, this Court looks at all three (3) parts, affording no element a particular weight.

Under the mechanical test, the Court considers the Debtor's current employment and income situations, as well as future prospects, current and future expenses, education levels and work skills, health, family support responsibilities and the marketability of the Debtor's work skills. *In re Frech,* 62 B.R. 235, 240 (Bankr.D.Minn.1986); *In re Kammerud,* 15 B.R. 1 (Bankr.S.D.Ohio 1980). It is the Debtor who bears the burden of showing that their income will not be sufficient to maintain a menial, or "poverty level", style of

---

**1.** Background information is taken primarily from stipulations, and is not in dispute.

living for the foreseeable future if the HEAL loan is not discharged. *Silliman*, at 751 (citing *Frech*, at 241).

Debtor, Ronald Rice, does not meet the burden of proof with respect to the mechanical test. Debtor's employment as a teacher is not of a temporary or unstable nature, and his prospects for continuing future employment appear to be good. Debtor does not have any physical disabilities which might prevent his continued employment, and his family obligations do not enjoin his work abilities.

In examining whether Debtor's expenses and income are either at or near the poverty level, or even reasonable when compared to a family of similar standing, some enlightening figures are provided by the Statistical Abstract of the United States and the Federal Register. Debtor's family income, before taxes, is approximately Sixty Thousand Two Hundred Fifty-three and 32/00 Dollars ($60,-253.32). The poverty level income for a family of five (5) in the U.S. in 1993 is Sixteen Thousand Eight Hundred Ten Dollars ($16,-810.00)[2]. Debtor's family income is nearly four (4) times that of a family of five (5) living at the poverty level.

If we compare Debtor's expenditures as listed in his brief, with those of the average five (5) person consumer unit, as of 1990, we are presented with the following numbers[3]:

| Expense | Debtor | Average | Difference |
|---|---|---|---|
| Pre-tax Income | $60,252 | $40,602 | $19,650 |
| Food | $ 9,600 | $ 6,183 | $ 3,417 |
| Housing | $ 9,064 | $11,104 | ($ 2,040) |
| Clothing | $ 3,900 | $ 2,257 | $ 1,643 |
| Transportation | $ 9,240 | $ 6,545 | $ 2,695 |
| Other Expenses | $11,700 | $ 5,113 | $ 6,587 |

With the exception of housing costs, and the possible exception of health care plan/insurance/pension plan expenditures[4] the Debtor's family's expenses far exceed even the average expenditure amounts for a family unit of similar size. U.S. Bureau of the Census, *Statistical Abstract of the United States: 1992* (112th edition), at 442–43. Under the

mechanical test, the Court would deem the debts Nondischargeable.

The second test focuses on the good faith of the Debtor. Specifically, the Court will examine the efforts which the Plaintiff has made to minimize his current living expenses while maximizing his earning potential, *Frech*, at 241, and whether or not the Plaintiff has made a bona fide effort to repay the loans. *Silliman*, at 751 (citing *In re Briscoe*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981)).

In the present case, Plaintiff fails the good faith test. Although the Court recognizes and commends the Plaintiff on his full time employment status, as well as his not-insubstantial family income, this Court finds that such an achievement is, in itself, insufficient to fulfill the requirements of good faith. The Court has reviewed the Bankruptcy Petition (hereinafter "Petition") as filed on May 1, 1992, and compared it to the expenses report contained within Plaintiff's Brief (hereinafter "Brief"), filed April 12, 1993. The Court notes that Plaintiffs post-petition monthly expenditures have increased from Two Thousand Six Hundred Twenty-four and 38/00 Dollars ($2,624.38) to Three Thousand Eight Hundred Ten Dollars ($3,810.00)—over 45%—with seemingly no reasonable justification. For example, the Petition reflects that at the time of filing, Plaintiff was paying One Hundred Seventy-five Dollars ($175.00) per month in gasoline costs. The Brief lists a cost of Three Hundred Twenty-five Dollars ($325.00) per month for gasoline. In the Petition, the monthly food, clothing dry cleaning and health care allowances totaled One Thousand Twenty-five Dollars ($1,025.00) per month. In the Brief, these expenses jumped to One Thousand One Hundred Eighty-five Dollars ($1,185.00). Further, in his Brief, the Plaintiff lists Two Hundred Dollars ($200.00) per month for their children's tuition bills, and Four Hundred Fifty Dollars ($450.00) per month in day care—a Six Hundred Fifty Dollar ($650.00) increase—since these items were not listed

---

**2.** 58 Fed.Reg. 8288 (February 12, 1993).

**3.** Numbers are rounded to the nearest dollar, and are the most recent figures available for comparison which have been compiled in an appropriate format.

**4.** Pension contribution figures were not available for Debtor's family.

on the original Petition at all. Finally, the Plaintiff lists, in both his Brief and his Petition, One Hundred Dollars ($100.00) per month in recreation and vacation expenses. The Court finds it disturbing that the Plaintiff can afford to increase his expenditures by over One Thousand Dollars ($1,000.00) per month, as well as plan for and enjoy a Twelve Hundred Dollar ($1,200.00) vacation account each year, yet claims that repaying his student loan obligations, even in part, would be unconscionable.

The Court also notes that the Plaintiff has made only minimal efforts, at best, to repay his loans. Plaintiff has paid a total of One Thousand Six Hundred Four and 39/00 Dollars ($1,604.39) toward his current balance of over Seventy-five Thousand Dollars ($75,-000.00), and made such payments only after the government obtained a judgment against him. Further, there is no evidence that any efforts were made to attempt to renegotiate the loans. In short, the Debtor is conspicuously lacking in good faith, and it would be difficult for this Court to find otherwise. The good faith test would compel a finding of Nondischargeability.

In applying the policy test, the Court must determine whether allowing the discharge of a particular student loan would constitute abuse of the bankruptcy process. *Frech*, at 241. The Court will examine the extent to which the motivation for the Bankruptcy Petition was to avoid liability for the student loan obligations in question. *In re Brown*, 18 B.R. 219, 233 (Bankr.D.Kan.1982); *Silliman*, at 751. Should the discharge of the loans be a dominant purpose of the bankruptcy, the Plaintiff will fail the policy test. This is because there exists a strong legislative and judicial policy against allowing the discharge of student loans in Bankruptcy. Sec. H.R.Rep. No. 595 97th Congress, 1st Session 132–33, 1977 (*reprinted* in 1978 U.S.C.C.A.N. 5787); *In re Brunner*, 46 B.R. 752 (S.D.N.Y. 1985), *aff'd* 831 F.2d 395 (2nd Cir.1987); *In re Johnson*, 5 B.C.D. at 542–43.

Examining the original petition, the Court notes that the educational loans of Mr. Rice made up some 78% of Plaintiff's total indebtedness[5]. This percentage is extremely large. The discharge of these loans was clearly the motivating factor behind the filing of the Bankruptcy Petition and, as such, the Plaintiff fails the policy test.

With the Plaintiff having failed to meet the requirements of any of the three (3) tests, this Court can find no justification for granting the Plaintiff's Petition for discharge of his HEAL obligations. It strikes the Court that the primary hardship facing the Plaintiff is one which has been self imposed; had the Plaintiff begun to repay the loans in a timely manner, or worked out some sort of payment plan with the Creditor, perhaps he would not currently be facing such an oppressive amount of debt. Rather than take any affirmative action, the Plaintiff has allowed these debts to languish, unpaid, for almost a decade. Such a course of action should not be encouraged, ratified or rewarded.

Although the Plaintiff has done virtually nothing to comply, or attempt to comply, with the terms of his agreement, and despite the fact that he appears to be taking advantage of the bankruptcy process, the Court may, in its discretion, determine that equity dictates reducing the amount of nondischargeable debt to a level which will not inflict unconscionable hardship upon his dependents. *See, In re Johnson; Silliman*, at 752; *Bakkum*, at 684; *In re Litell*, 6 B.R. 85, 89 (Bankr.D.Ore.1980).

This Court has weighed the hardships which might be inflicted upon the Plaintiff's dependents; the less than admirable attempts of the Plaintiff to act in good faith; and the relevant policy considerations. Based on the equities in this case, the Court finds that Twenty-seven Thousand Five Hundred Dollars ($27,500.00) of the debt should be held Nondischargeable. The remainder should be Discharged as unconscionable pursuant to 42 U.S.C. 294f(g).

---

**5.** In the Bankruptcy Petition, educational loans of Mrs. Rice (the discharge of which are not currently at issue) were also enumerated as debts to be discharged. These loans made up an additional 18% of Debtors' indebtedness. Student loans, in toto, made up approximately 96% of the debts to be discharged on the Rice's joint petition.

In reaching this conclusion, the Court has considered all of the evidence and arguments of counsel, whether or not they have been specifically referred to in this Opinion.

Accordingly, it is,

*ORDERED* that Plaintiff's Motion for Summary Judgment as to the controlling discharge provision be, and is hereby, *DENIED.*

It is *FURTHER ORDERED* that the Plaintiff's Motion for Summary Judgment on the issue of dischargeability be, and is hereby, *GRANTED IN PART,* in the amount of Fifty Thousand One Hundred Ninety-four and 46/00 ($50,194.46).

It is *FURTHER ORDERED* that The United States' Motion for Summary Judgment as to the controlling discharge provision be, and is hereby, *GRANTED.*

It is *FURTHER ORDERED* that the Defendant's Motion for Summary Judgment on the issue of nondischargeability be, and is hereby, *GRANTED IN PART,* in the amount of Twenty-seven Thousand Five Hundred Dollars ($27,500.00).