**In re Jeffrey PHILLIPS, Debtor.**

**Jeffrey PHILLIPS, Plaintiff,**

**v.**

**GREAT LAKES HIGHER EDUCATION CORP., Defendant.**

Bankruptcy No. 92–34296.
Adv. No. 92–3574.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 21, 1993.

Gordon Barry, Toledo, OH, for plaintiff.

Lloyd Blaney, Madison, WI, for defendant.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court upon Jeffrey Phillips' ("Debtor") complaint to determine dischargeability of an educational debt (the "Loan") owed to Great Lakes Higher Education Corp. ("Lender") under 11 U.S.C. § 523(a)(8). Upon consideration of the evidence adduced at trial, the Court finds that the Loan should be excepted from discharge.

### FACTS

Debtor filed his petition under chapter 7 of title 11 on December 4, 1992.

The balance of the Loan on the petition date was $1,752.33. The Debtor incurred the Loan in attending a six-month course in bar management in 1989. The original principal amount of the Loan was $2,625.00. The Debtor has made payments of $1,419.52 on the Loan including principal payments of $920.01 and interest payments of $499.51.

The Debtor presently earns $350.00 per month working two nights a week at JJ's Aqua Lounge and performing "odd jobs". The Debtor also owns a motorcycle with an estimated value of $700.00.

The Debtor's income for the years 1990, 1991 and 1992 totaled $13,128.23, $15,620.30 and $11,593.13, respectively.

The Debtor's current expenses include payments of $200.00 per month for room and board to his brother, $145.12 per month for a 1989 Subaru Justy to his mother and $35.00 per month to his mother for a debt which the Debtor purportedly incurred for car repairs.

The Debtor has worked as a bartender at Brandywine Country Club, Shadow Valley Racquetball Club, and Toledo Country Club ("TCC").

The Debtor was employed at TCC on the petition date. The Debtor was dismissed from this position in March of 1993. The Debtor testified that he was unaware of the grounds for his dismissal. The Debtor was denied unemployment.

In response to questions regarding his future employment prospects, the Debtor admits that he has not been seeking employment "as much as [he] should".

The Debtor testified that the unemployment bureau "sent [him] out on one bartending job" interview but that this job was not "going to work out" because it was "in a bad section of town". The Debtor did not provide testimony as to any other instances where he sought a job in bartending other than the fact that he had "called a few bartending places" and received no response.

The Debtor also received training in the truck driving field. The Debtor discharged the loan which financed his training in the truck driving field in this bankruptcy case. The Debtor testified that the balance which he previously owed on this loan was "roughly" $2,000.00.

The Debtor stated that he has sought employment in the truck driving field but has "been turned down every time". The Debtor could not provide any specific examples of employers from whom he has sought a job other than an attempt to obtain a job at "a place in the North End". Although the Debtor testified to having problems concerning his driving record in the past, the Debtor stated that his past driving record would not pose a present barrier to obtaining employment in the truck driving field.

The Debtor testified that he has not sought employment outside of the Toledo area because his car "drinks a lot of gas". In response to a question by Lender's counsel as to whether he has made any phone calls to employers outside the Toledo area, the Debtor was unable to provide any instances where he has made phone inquiries regarding such potential employment.

The Debtor further testified that he has no physical disabilities, is unmarried and has no children.

## DISCUSSION

■ The Debtor argues that the Loan represents an "undue hardship" under 11 U.S.C. § 523(a)(8)(B). The parties agree that the Lender has satisfied its burden of proof on all of the other elements of § 523(a)(8).

"[U]ndue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993) (quoting Comm'n on the Bankruptcy Laws of the United States, Report, H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. II, at 140 n. 16 (1973)).

"The various decisions addressing this issue have adopted a number of ... tests in defining what constitutes an 'undue hardship'". *Ford v. Tennessee Student Assistance Corp. (In re Ford)*, 151 B.R. 135, 139 (Bankr.M.D.Tenn.1993) (citations omitted). The two tests most widely applied by courts in determining whether an educational loan constitutes an "undue hardship" are those articulated in *Brunner v. New York State Higher Educ. Services Corp.* and *Pennsylvania Higher Educ. Assistance Agency v. Johnson (In re Johnson)*. Compare *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2nd Cir.1987) (the debtor must prove "(1) that the debtor cannot maintain based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans") *with Pennsylvania Higher Educ. Assistance Agency v. Johnson (In re Johnson)*, 5 Bankr.Ct.Dec. 532 (Bankr.E.D.Pa.1979) (applying a "mechanical" test which gauges the debtor's present and prospective financial circumstances, a "good faith" test which examines whether the debtor has made a bona fide attempt to repay the loan, and a "policy test" which determines whether the debtor was a member of the class for which Congress desired to preclude a discharge of student loan indebtedness). Viewed under either the *Brunner* test or the *Johnson* test, the Debtor's circumstances do not constitute an undue hardship.

### The Debtor's Current Financial Condition

As the court stated in *Healey v. Massachusetts Higher Educ. (In re Healey)*:

> It is beyond peradventure that requiring repayment of the student loans in the instant case (and, for that matter, in almost any case), imposes a 'hardship' on the debtor. It is more difficult and expensive to honor an obligation than to disregard it, and reimbursement often means that financial resources will either be tight or not available at all for other discretionary activities. However, '[t]he fact that a debtor's budget may be tight for the foreseeable future is the norm rather than the exception.' *Bakkum v. Great Lakes Higher Educ. Corp. (In re Bakkum)*, 139 B.R. 680, 682 (Bankr.N.D.Ohio 1992) (citation omitted).

*Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 392–93 (E.D.Mich. 1993).

Although the record does not contain evidence of extravagant expenditures by the Debtor, the Court concludes that the Debtor has failed to show that he is unable to maintain a minimal standard of living. "Implicit within this inquiry is the requirement that the debtor demonstrate that [he] is actively minimizing current household living expenses and maximizing personal and professional resources." *Healey*, 161 B.R. at 394 (citing *In re Evans*, 131 B.R. 372, 375 (Bankr.S.D.Ohio 1991)).

The Debtor freely admits that he has made insufficient efforts to seek employment. The Debtor's meager efforts to obtain work in bartending and truck driving, or in any other field, do not constitute maximizing his personal and professional resources. *See Healey*, 161 B.R. at 394–95 (finding that debtor had not maximized personal resources where she remained in a field which she "loved" despite the fact that this occupation did not

pay as much as other jobs for which she was qualified); *In re Ford,* 151 B.R. at 139 (finding debt nondischargeable where debtor who was 50% disabled placed undue restrictions on her availability to work). Further, the Debtor has unduly limited the geographical scope of his job search. The Court is not convinced that the Debtor would be unable to repay the Loan and maintain a minimal standard of living if he maximized his personal and professional resources.

**The Debtor's Financial Prospects**

Moreover, the Court cannot conclude that the Debtor's present financial situation will persist in the future.

" '[T]he dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment' ". *In re Roberson,* 999 F.2d at 1136 (quoting *In re Briscoe,* 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981)); *see also Brunner,* 831 F.2d at 396 (finding student loan nondischargeable where "[t]he record demonstrat[ed] no 'additional circumstances' indicating a likelihood that [the debtor's] current inability to find any work will extend for a significant portion of the loan repayment period" in a case where debtor had no dependents and was not disabled or elderly); *In re Ford,* 151 B.R. at 140 (present financial adversity was not enough to support a finding of undue hardship where evidence indicated that debtor was not using her best efforts to improve her financial status).

As previously noted, the Debtor has received training in both bartending and truck driving. The Debtor has not provided persuasive evidence that he will be unable to obtain employment as a bartender or a truck driver in the future. *See Healey,* 161 B.R. 389 (finding student loan nondischargeable where debtor failed to prove that current adverse financial circumstances would persist). Additionally, the Debtor did not provide persuasive evidence at trial indicating that he would be unable to repay the Loan if he were to obtain employment as a bartender or a truck driver. Therefore, the Debtor has not demonstrated that his current adverse financial condition will persist for a significant portion of the Loan's repayment period.

**The Debtor's Good Faith**

Although the Debtor has made some payments on the Loan, the Court cannot conclude that the Debtor has endeavored to pay the Loan in good faith. The record is devoid of evidence that the Debtor sought the less drastic remedy of a deferment of payments on the Loan before attempting to discharge the Loan. Nor did the Debtor provide any evidence that he has sought to negotiate payment arrangements with the Lender. *See Brunner,* 831 F.2d at 397 (finding that debtor lacked good faith in attempting to discharge debt where she failed to seek a deferment on loan); *Healey,* 161 B.R. at 397 (finding the debtor's attempt to discharge debt without first seeking to negotiate a payment arrangement with the lender evinced bad faith).

Further, in addition to a 1989 automobile on which he is presently making payments, the Debtor presently possesses a motorcycle valued at $700. Although the Debtor has alternative means of transportation, the Debtor did not demonstrate any intent to liquidate this asset to repay the Loan.

The Debtor is also making payments of $145.12 per month to his mother for a postpetition debt on a 1989 Subaru. The Debtor intends to pay this substantial post-petition debt, yet seeks to discharge the Loan. The Debtor provided no evidence that he intends to surrender this vehicle to his mother and obtain another less expensive vehicle.

Although payment of the loan may limit the Debtor's other discretionary spending in the future, the Debtor has not provided proof that payment of the Loan would represent an "undue hardship".

**"Policy" Considerations**

■ The "policy" factors which a court may examine under § 523(a)(8)(B) include:

1. the amount of the educational debt
2. the percentage of the [debtor's] total indebtedness which is composed of student loans
3. the extent to which the debtor's college education has enhanced his earning capacity.

*In re Johnson,* 5 Bankr.Ct.Dec. at 543.

The educational loans which the Debtor listed on his bankruptcy schedules represent

a substantial amount of his total indebtedness. To allow the Debtor to discharge the Loan would not comport with the congressional intent to curb consumer bankruptcies " 'motivated primarily to avoid payment of educational loan debts' ". *In re Johnson,* 5 Bankr.Ct.Dec. at 543 (citation omitted); *see In re Ford,* 151 B.R. at 139–140 (the fact that educational debt represented a substantial part of debtor's total unsecured debt weighed against granting discharge); *Silliman v. Nebraska Higher Educ. Loan Program (In re Silliman),* 144 B.R. 748 (Bankr.N.D.Ohio 1992) (finding that debtor did not satisfy the "policy" test where the student loans which debtor was attempting to discharge represented 41% of the total indebtedness scheduled).

In light of the foregoing, it is therefore

ORDERED that the debt owed by Jeffrey Phillips to Great Lakes Higher Education Corp. be, and it hereby is, excepted from discharge.